[No. 28277. *En Banc.* October 28, 1942.]

L. E. GRAY *et al., Appellants,* v. H. J. DAVIDSON, *Respondent.*[1]

[1]Reported in 130 P. (2d) 341.

258

*Edwards Merges* and *Adam Beeler*, for appellants.

*Eggerman, Rosling & Williams*, for respondent.

BEALS, J.—Plaintiffs, L. E. and Willie M. Gray, husband and wife, sued H. J. Davidson, a physician, and Mabel G. Davidson, his wife, for damages which plaintiffs alleged were suffered by plaintiff L. E. Gray as the result of the negligence of Dr. Davidson, who had

treated Mr. Gray professionally. In this opinion, Mr. Gray will be referred to as plaintiff, and Dr. Davidson as defendant.

During the month of February, 1936, plaintiff, then residing in Portland, Oregon, scratched the tip of his right thumb on a shingle nail. The injury was superficial, the shingle nail not even piercing the tissues of his thumb sufficiently to draw blood. Several days later, plaintiff suffered pain in his thumb, and pricked it with a sterilized needle, causing a bloodlike fluid to flow. Plaintiff attempted a similar operation a few days later. March 9th, Mr. and Mrs. Gray went to Seattle in search of employment. The next day, the pain in his thumb having become severe, plaintiff consulted defendant, who had treated him on a prior occasion. The doctor diagnosed the infection as a felon, administered an anaesthetic, and made an incision in the tip of the thumb, for the purpose of draining the pus from the infected area. Plaintiff's condition went from bad to worse, as will be hereinafter stated, finally resulting in the loss of his right arm.

In his complaint, plaintiff alleged that the loss of the arm was caused by defendant's negligence.

The issues having been made up, the action was tried to a jury, which returned a verdict in plaintiff's favor, whereupon defendant moved for judgment in his favor notwithstanding the verdict, or, in the alternative, for a new trial. The motion for judgment was denied. The court, however, granted a new trial, being of the opinion that error had been committed in instructing the jury, and in refusing to give an instruction requested by the defendant. From the order granting a new trial, plaintiff has appealed.

The order granting a new trial contains the following:

"It is further ordered that the motion of the defendant for a new trial herein be and the same is hereby granted upon the grounds and for the reasons that error was committed by the inclusion of sub-paragraph 2 within instruction No. 3; by the inclusion of the word 'diagnosis' in instruction No. 5; and by the court's refusal to give the instruction requested by the defendant withdrawing from the jury the issue of negligence as set forth in the eighth subdivision of paragraph VI of the complaint herein."

Appellant's four assignments of error are based upon the rulings of the trial court that error had been committed as set forth in the order above quoted, and upon the granting of a new trial.

In his opening brief, appellant discusses the questions which he presents at large, while respondent, in his answering brief, does not discuss the merits of the case, but argues only the proposition that this court should not consider appellant's assignments of error, for the reason that appellant did not, in his brief, print in full the instructions which the court, in granting respondent's motion for new trial, held to be erroneous. In this connection, respondent relies upon paragraph five, of rule XVI, Rules of the Supreme Court, 193 Wash. 25-a, which contains the following:

"Where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full."

The portion of the rule quoted was, of course, intended to render an appellant's assignment of error, when based upon an instruction of the court, together with his argument on such an assignment, readily understood without examination of the transcript. The rule is an excellent one, and has served a good purpose. We have extended the strict terms of the rule by holding that, when error is assigned upon the refusal of the court to give a requested instruction, the

requested instruction must be printed in full in appellant's brief. While such a situation as that here presented seems to fall within the spirit of the rule, it certainly is not included in the language used, as appellant is not basing any objection upon an instruction of the court, but on the contrary, is contending that the instructions as given were correct, and that the court did not commit error in refusing the instruction requested by respondent. Rules of court, which may be amended at any time, should not be so liberally construed as to include matters not reasonably within the language of the rule, when such construction would operate to the detriment of a litigant. Appellant bases no objection on any instruction of the court, and while the printing in appellant's brief of the instructions which the trial court held erroneous would have been advisable, appellant was not required to do this, and is entitled to have his appeal considered on the merits.

Taking up the statement of the evidence from the termination of the preliminary statement above set forth, respondent testified that, when, on March 10th, he made the incision in appellant's thumb, a portion of the bone and tissue in the tip of the thumb was necrotic and dead. Respondent instructed appellant to keep the thumb in a hot Epsom salt or boric acid solution. The next day respondent dressed the wound, renewing the instructions given the day before. Appellant called at respondent's office daily, until March 16th, when an X ray was taken. From an examination of the negative, the doctor determined that there had been no restoration of circulation in the necrotic portion of the thumb, and removed a small piece of the distal phalanx. The next day the wound was again dressed. The eighteenth, the thumb was very painful, red streaks appearing in the forearm from the wrist

about half way to the elbow. Appellant had a temperature of 99.2 degrees, and testified that a small lump had appeared in his armpit. On the nineteenth, appellant again visited respondent's office, at which time the red streaks had subsided, and appellant's temperature was about normal.

In the course of the afternoon of the nineteenth, appellant's hand became extremely painful. Mrs. Gray attempted to reach respondent by telephone from five o'clock until ten o'clock p. m., but was unsuccessful. At about nine-thirty o'clock, appellant's landlady, being aware of appellant's suffering, called her own physician, Dr. Foster, telling him that appellant could not reach his own physician, and was suffering intensely. Dr. Foster agreed to send a drug to deaden the pain. At about ten o'clock, Mrs. Gray succeeded in reaching respondent over the telephone and, after describing her husband's condition, requested respondent to visit her husband. Mrs. Gray testified that respondent inquired as to whether or not appellant was then employed, and, upon being informed that he was not employed, respondent stated that he was unable to help them any further, and suggested that appellant be taken to the county hospital. After that time, respondent did not again see or treat appellant.

Respondent's version of the telephone conversation between Mrs. Gray and himself did not agree with Mrs. Gray's narrative. Respondent testified that on the preceding day he had suggested to appellant that if the infection became worse appellant should go to a hospital; that appellant said that he was reluctant to go to a hospital on account of the expense; whereupon respondent told appellant that he could be cared for at the county hospital. He testified that he made similar statements to Mrs. Gray over the telephone on the evening of the nineteenth, and that he stated

that he would arrange for appellant's admission to the county hospital, but that under those circumstances he could no longer treat appellant. In any event, all parties agree that, after the telephone conversation with Mrs. Gray, respondent had no further connection with the case.

After Mrs. Gray talked with respondent over the telephone on the evening of the nineteenth, Dr. Foster was at once called, and arrived at the hotel within twenty minutes. After the doctor administered a hypodermic injection to appellant, the latter was removed to Providence hospital. The next morning Dr. Foster called Dr. Allen, a surgeon, who examined appellant and took charge of the case. March 22nd, Dr. Allen operated on appellant's hand, and between that date and May 4th, when appellant was removed to the Marine hospital, Dr. Allen made numerous incisions in appellant's hand, in an effort to establish drainage and prevent the infection from spreading. Almost immediately after appellant entered the Marine hospital, an amputation was performed, and soon thereafter appellant was removed to the veterans' hospital, in Portland, Oregon, where three additional amputations were performed, the last having been accomplished January 11, 1937, when the arm was amputated at a point five and one-fourth inches from the armpit. Appellant was discharged from the veterans' hospital during the month of April, 1937.

The complaint in this action was filed January 23, 1939, demanding judgment for $45,796.40, by way of damages for the loss of the arm, pain and suffering, earnings lost and to be lost in the future, hospital and doctors' bills, and some other minor items. Respondent's answer consisted of denials only.

Instructions Nos. 3 and 5, to which respondent excepted, being the instructions which the trial court

deemed erroneous and entitling respondent to a new trial, are contained in the transcript, being the only instructions contained therein. Instruction No. 3 reads as follows:

"The only allegations of negligence remaining for your consideration are these two:

"(1) That the defendant was negligent and unskillful in the treatment of plaintiff's infected thumb in failing, timely and properly, to incise and drain the infected parts and to remove the necrotic bone and soft tissues, thereby permitting and producing an extension of the infection into other tissues;

"(2) That the defendant was negligent and unskillful in the treatment of the plaintiff's infected thumb by discharging the plaintiff from his care while the infection was active and dangerous.

"In order for the plaintiffs to recover a verdict against the defendants, it will be necessary for the plaintiffs to prove, by a fair preponderance of the evidence, that the defendant Dr. Davidson was negligent in one or both of these two particulars, and that such negligence was the proximate cause of injury and damage to the plaintiff.

"If you find that the defendant Dr. Davidson was negligent in one or both of these two particulars, and that such negligence on his part proximately caused resulting damage to the plaintiffs, then it will be your duty to return a verdict for the plaintiffs. On the other hand, if you fail to so find, you should return a verdict in favor of the defendants."

In the first paragraph of instruction No. 5, the court instructed the jury that

"The basis of this action is the alleged negligence of the defendant doctor in the diagnosis and treatment of the plaintiff husband. Before the plaintiffs can recover in this case, they must show by a fair preponderance of the evidence, first, that the defendant was guilty of some act of negligence as alleged in the complaint, and, second, that such negligence was the proximate cause of some injury to the plaintiff husband."

In the remainder of the instruction, the court defined "negligence," "proximate cause," and "fair preponderance of the evidence."

After the argument on the motion for new trial, the court, as stated in the order granting a new trial, was of the opinion that error had been committed in giving subparagraph two, as contained in instruction No. 3. By instruction No. 3, the jury were told that they should consider two matters of alleged negligence on the part of respondent. With the first we are not concerned, appellant contending, however, that subparagraph two of the instruction was not erroneous, but was proper and should have been given. By this portion of the instruction, the jury were permitted to consider, as an element on account of which they might award appellant damages, respondent's act in discharging appellant from his care, as above set forth, on the evening of March 19th. In considering this question, of course, appellant must be given the benefit of any conflict in the evidence, and of any reasonable inferences which the jury might have drawn from the evidence.

In his brief, respondent argues only that appellant's assignments of error should not be considered because the instructions which the court gave were not printed in appellant's opening brief, and because all of the instructions given have not been brought before this court in the transcript. As to this latter objection, it is true that we have frequently held that instructions should be considered as a whole, but in this case instruction No. 3, which the trial court deemed erroneous, is complete in itself, and stands or falls upon its own language.

By subparagraph two of instruction No. 3, the jury were told that if they found that respondent was negligent and unskillful in the treatment of appellant's in-

fected thumb, by discharging appellant from respondent's care while the infection was active and dangerous, and that such negligence on respondent's part proximately caused resulting damage to appellant, then and in that event they should return a verdict in appellant's favor. Under the instruction, the jury might find that this was the only negligence on the part of respondent which resulted in damage to appellant, or they might find that respondent had been guilty of negligence in both particulars, as set forth in instruction No. 3, and the verdict which the jury returned in appellant's favor may have been based upon either or both acts of respondent which the jury were instructed they could consider as negligence.

It must be remembered that Dr. Foster visited appellant about twenty minutes after respondent was requested to call on appellant on the evening of March 19th. Dr. Foster took charge of the case, moved appellant to a hospital, and called Dr. Allen the next morning, the latter not operating upon appellant's hand until March 22nd.

Appellant argues that the record contains sufficient evidence of damage to appellant from respondent's withdrawal from the case, by way of mental shock and physical pain to appellant, and actual physical injury to appellant from the failure of respondent to act on the evening of March 19th, to support such a finding by the jury. Appellant also argues that negligence on the part of respondent, and resulting injury therefrom to appellant, may be inferred from the evidence contained in the record, and that direct evidence of such injury need not have been before the jury to aid them in drawing such an inference.

It is the general rule that, when a physician undertakes to treat a patient, it is his duty to continue to devote his best attention to the case until either

medical attention is no longer needed, he is discharged by the patient, or he has given the patient reasonable notice of his intention to cease to treat the patient, so that another physician may be obtained. 48 C. J. 1128, § 115. Abandonment of a case by a physician without sufficient notice or adequate excuse is a dereliction of duty, and, if injury results therefrom, the physician may be held liable in damages. In 56 A. L. R. 818, 819, the rule is stated as follows:

"Where a physician is employed to attend a patient, the relation of physician and patient continues until ended by the consent of the parties, or revoked by the dismissal of the physician, or until his services are no longer needed. The physician must exercise reasonable and ordinary care and skill in determining when to discontinue his treatment; and, where he terminates his employment without due notice to his patient and without affording the latter an ample opportunity to secure other medical attendance, he is liable for any damage caused thereby."

■■ Under the evidence, the jury might have found that respondent had abandoned appellant without sufficient justification, and, if the record contains evidence which would support a finding that by this abandonment appellant suffered injury, doubtless the instruction as given was correct. It is not, however, sufficient that appellant introduce evidence showing merely the breach of some duty by respondent; appellant must go further and show that such breach of duty resulted in some compensable injury to appellant. In this connection, the only evidence relied on by appellant is that of Dr. Poyntz, a physician called as a witness by appellant. This witness testified at considerable length, stating that respondent was negligent in his treatment of appellant, in that he failed to properly incise the infected area, to take necessary tests to aid him in determining the proper course of treatment, etc., but the witness did not testify, nor is it a reason-

able inference from his testimony, that appellant suffered any damage, or that his condition became worse, because respondent terminated his care and treatment of appellant, leaving appellant without a physician or medical assistance for perhaps half an hour on the evening of March 19th. The record contains no evidence that there was any causal connection between the situation referred to and the later suffering endured by appellant, or the creation of the condition which resulted in the amputation of appellant's arm.

It is true, as argued by appellant, that certain situations may exist from which a jury may infer that an injury occurred because of the negligence of the attending physician, although there may be no expert or other testimony directed to that particular issue.

In the case of *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235, this court held that, where an instrument was left in the body of the patient after an operation, the jury might infer that it was left there as a result of negligence.

In the case of *Cornwell v. Sleicher*, 119 Wash. 573, 205 Pac. 1059, it was held that evidence showing an undoubted bad result in treating a fractured arm presented a question upon which the jury should pass.

These cases are not controlling here.

The basic question to be determined is one of causation. Dr. Foster testified that, when he saw appellant on the evening of March 19th, there was evidence of severe infection, and that appellant had a temperature of 101 degrees. It does not appear that, had respondent responded to the telephone call as soon as he received it, he could have reached appellant any sooner than Dr. Foster did. All the physicians who testified agreed in the opinion that, from the time the red lines first appeared on appellant's arm, March 18th, there was every indication that appellant was suffering from

lymphangitis. We find no evidence in the record upon which could be based a judgment for damages in appellant's favor occasioned by respondent's refusal to visit appellant on the evening referred to.

Physicians called by respondent testified that, under the facts of the case, appellant was not injured by respondent's failure to answer the call. While the jury might disbelieve this medical testimony introduced by respondent, it is nevertheless true that the record contains no evidence which would support an award of damage in appellant's favor and against respondent, based upon this particular phase of the case.

Appellant argues that mental suffering endured by appellant because of his abandonment by respondent would support a verdict for damages in appellant's favor. It appears that Mr. Gray was not acquainted with any other physician in Seattle. He knew that his thumb and hand had become progressively worse, and that, while respondent had refused to attend appellant, respondent had stated that appellant was in need of hospitalization. Conceding that appellant might well be disappointed and mentally perturbed because of respondent's refusal to visit him, such a mental condition, which may be considered in conjunction with other types of actual damage, in the absence of evidence of any such damage is not sufficient to support an award.

In connection with this phase of the argument, appellant cites the case of *Ricks v. Budge,* 91 Utah 307, 64 P. (2d) 208, which he argues should be followed in the case at bar. In the case cited, it appeared that the plaintiff was suffering from an infected finger, which had been incised by the defendant physician to establish drainage. Plaintiff's condition having become worse, the physician indicated that a further operation was necessary, and that plaintiff should go to a hos-

pital. Plaintiff then went to a hospital conducted by defendant physician, and was being prepared for the operation, when the doctor refused to continue to treat plaintiff, because of an old unpaid account which the doctor discovered the plaintiff owed him. The plaintiff then dressed, left the hospital in the rain, and walked to another hospital, where an operation was performed upon his hand. The court held that plaintiff's case should be submitted to the jury, the court being of the opinion that it could not be held as matter of law that the plaintiff had suffered no damage from the abandonment. The case cited is not controlling here, as it appeared that the physician admitted that, at the time of his abandonment of the plaintiff, the latter was in a dangerous condition and in dire need of immediate attention. This was borne out by the fact that the surgeon who did undertake to treat the plaintiff immediately performed an operation upon plaintiff's hand.

In the case at bar, after Dr. Foster was retained he procured Dr. Allen, a surgeon, to take charge of the case, no radical change in the treatment of appellant's hand was made, and no operation was performed thereon until March 22nd.

A study of the entire record convinces us that the trial court properly ruled that error had been committed in submitting to the jury the question of negligence on the part of respondent and resulting damage to appellant, based solely upon respondent's discharging appellant from his care on the evening of March 19th.

The trial court was also of the opinion that error had been committed in including the word "diagnosis" in the first sentence of instruction No. 5, *supra*. It would seem that this word was improperly included in the instruction. Whether, if this error stood alone, it

should be held sufficiently prejudicial to require the granting of a new trial, need not be determined.

In the order granting a new trial, the trial court expressed the view that error had also been committed by the refusal of the court to withdraw from the jury the issue of negligence, as set forth in the eighth subdivision of paragraph six of the complaint. By this subdivision of the paragraph referred to, appellant alleged that respondent had been

" . . . negligent and unskillful in the treatment of the plaintiff's infected thumb by discharging the plaintiff from his care while the infection was active and dangerous and the patient suffering severe pain."

This matter was, of course, covered by the portion of instruction No. 3 above referred to, submitting that issue to the jury, concerning which we are in accord with the trial court's holding that this portion of the instruction was erroneous.

The trial court did not err in granting respondent's motion for a new trial, and the order appealed from is accordingly affirmed.

ROBINSON, C. J., and DRIVER, J., concur.

STEINERT, J. (concurring in part and dissenting in part)—I think that the order granting a new trial should be affirmed solely upon the ground that appellant's assignments of error cannot be considered, inasmuch as he has failed to comply with certain requirements of Rule XVI(5), Rules of the Supreme Court, 193 Wash. 25-a, relating to briefs and reading as follows:

"Each error relied on shall be clearly pointed out and separately discussed under appropriate designated headings. Where there are several assignments presenting the same general questions, they may be discussed together. *Where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full.*" (Italics mine.)

The sentence which has been italicized above is the pertinent provision here.

In a long line of cases, the rule in question has been consistently followed and rigidly enforced by this court. As stated in one of our more recent cases, *Walker v. Copeland*, 193 Wash. 1, 74 P. (2d) 469,

"This rule must be observed, as a respondent, in preparing his answering brief, must either rely upon the rule or treat it as a dead letter. The rule is reasonable and should be enforced."

This rule has been applied where the objections are based on *requested* instructions, as well as where based on *given* instructions. *State v. Hussey*, 188 Wash. 454, 62 P. (2d) 1350. We have also held that the failure to print the instructions in appellant's *opening* brief is not cured by setting them forth in appellant's *reply* brief (*Walker v. Copeland, supra; Moffitt v. Goldcamp*, 195 Wash. 75, 79 P. (2d) 695), or in a supplemental document filed by the appellant (*State v. Domanski*, 9 Wn. (2d) 519, 115 P. (2d) 729), or even if they appear in the respondent's *answering* brief (*State v. Jensen*, 194 Wash. 515, 78 P. (2d) 600; *Moffitt v. Goldcamp, supra*); nor is the appellant's failure in that respect cured by the respondent's failure to raise the point (*State v. Hussey, supra; Moffitt v. Goldcamp, supra*). In virtually all of the cases where the rule was enforced, the instructions were in fact brought to this court either in the transcript or else in the statement of facts, and yet we held that, since they were not set forth in appellant's *opening* brief, we would not consider any assignments of error based thereon.

The rule was purposely adopted to facilitate the work of this court, by requiring the appellant to set forth in full, in his opening brief, any and every instruction, whether given or merely requested, necessary to be considered in disposing of the questions

raised on the appeal, so that the judges hearing the argument might beforehand ascertain directly from appellant's opening brief the legal issues involved, without having to search out that information by recourse to the records in the clerk's office.

It is true that, in this case, appellant does not assign error upon the *giving* of any particular instruction or upon the *refusal* to give a certain requested instruction, but, rather, assigns error on the part of the trial court in granting a new trial because of *having given* certain instructions and *having refused* to give a particular requested instruction. However, the questions raised herein by the appellant involve the very instructions which were given or else requested, and in order to determine the validity of appellant's assignments of error recourse must be had to the transcript in order to find and consider those instructions. And that is exactly what the writer of the majority opinion and those concurring with him had to do, for it is manifest that the order of the trial court, quoted in the majority opinion, does not in itself disclose the content of the instructions nor reveal wherein they are erroneous. The assignments of error are therefore "based on the instruction of the court," that is to say, the instructions given or refused by the court lie at the very basis of appellant's assignments of error.

I am of the opinion that the intendment of the rule is, and the interpretation placed upon it should be, that whenever an assignment of error turns upon the correctness or propriety of an instruction or requested instruction, the appellant must set forth that instruction or requested instruction in full, in his opening brief, regardless of whether he is attacking or defending the action of the trial court with reference thereto. If that conclusion were adopted in this instance, the integrity of the rule would be preserved; nor would

the appellant, in the end, have suffered any disadvantage under the circumstances, for at the most he would be required to submit to a new trial, and that is precisely the result achieved in the majority opinion wherein the order of the superior court granting a new trial is affirmed.

Since, however, the majority have reached a different conclusion with reference to the matter just discussed, I shall accept that as the basis from which to proceed and shall consider the case from the standpoint of its merits.

The majority opinion recognizes it to be the rule that, where a physician is employed to attend a patient, the relation of physician and patient continues until ended by the consent of the parties, or revoked by the dismissal of the physician, or until his services are no longer needed, and, further, that, where the physician terminates his employment without due notice to his patient and without affording the latter an ample opportunity to secure other medical attendance, the physician is liable for any damage caused thereby.

The majority opinion then concedes that, under the evidence in this case, the jury could have found that respondent had abandoned appellant without sufficient justification. It further concedes that appellant became mentally perturbed because of respondent's refusal to visit him. The majority opinion then holds, however, that there is no evidence in the record, nor any basis for a reasonable inference, of any causal connection between respondent's failure to further treat appellant and the suffering which the latter endured thereafter. I cannot subscribe to that holding. I think that the evidence and the reasonable inferences to be drawn therefrom do establish a *prima facie* case of causal connection.

Appellant was affected with a severe infection of his right thumb. He came to Seattle and placed himself under the care of the only physician whom he knew in that city. He was attended by that physician for a period of ten days. His condition became progressively worse. On the evening of the tenth day, the infection in his hand and arm became extremely painful. From five o'clock until 9:30 o'clock p. m. his wife endeavored to communicate with respondent, but was unsuccessful. Because of appellant's intense pain, the landlady of the hotel where appellant and his wife were staying called another physician, who agreed to send over a drug to deaden the pain. At ten o'clock appellant's wife succeeded in reaching respondent by telephone and requested him to visit her husband. In that conversation, respondent inquired whether appellant was employed and, on being told that he was not, stated that he would be unable to attend appellant any further, although he advised that appellant be taken to a hospital. The other physician, *who was not a surgeon,* was then summoned and, after administering an hypodermic injection to appellant, he ordered that the patient be at once removed to a hospital. Appellant's temperature had reached 101 degrees. *On the next day,* that physician called in conference a surgeon, who found that appellant was suffering from a spreading infection. *Two days thereafter* that surgeon performed the first of a series of operations. Six weeks later began a series of amputations, finally resulting in the loss of the greater part of appellant's arm.

While the respondent gave a somewhat different version of his conversation with appellant's wife, the jury was entitled to resolve the facts as above stated. In my opinion, the appellant undoubtedly suffered much mental anguish induced by the fact that he had

been abandoned in his extremity by the physician in whom he had placed full confidence. Moreover, while his pain was temporarily deadened by the hypodermic injection, that did not arrest the infection. Had the respondent attended the patient as he should have done, he would no doubt have performed the operation immediately upon arriving at the hospital. Whether the subsequent operation by the second surgeon was delayed for a period of two days because of the effect of the previous hypodermic injection or because that surgeon was otherwise engaged, I do not know. But the facts as hereinbefore stated and the reasonable inferences therefrom, in my opinion, presented a case for the jury, on the questions of negligence and damage. It must be remembered that this is not a case wherein the appellant is seeking damages merely for *mental* pain and suffering, but damages for negligence in the original treatment *augmented* by mental and physical pain suffered by reason of the wrongful refusal to give further treatment.

The case of *Ricks v. Budge*, 91 Utah 307, 64 P. (2d) 208, cited in the majority opinion, presented a situation similar to the one here. Touching the point now under consideration, the supreme court of Utah said:

"We cannot say as a matter of law that plaintiff suffered no damages by reason of the refusal of Dr. S. M. Budge to further treat him. The evidence shows that from the time plaintiff left the office of the defendants up until the time that he arrived at the Cache Valley Hospital [a few blocks away] his hand continued to swell; that it was very painful; that when he left the Budge Memorial Hospital he was in such condition that he did not know whether he was going to live or die. That both his mental and physical suffering must have been most acute cannot be questioned. While the law cannot measure with exactness such suffering and cannot determine with absolute certainty what damages, if any, plaintiff may be entitled to, still those

are questions which a jury under proper instructions from the court must determine."

It may be that the plaintiff in that case suffered greater physical pain and mental anguish than did the appellant here, but that would be simply a matter of degree, affecting only the *amount* of damages recoverable.

The majority opinion distinguishes that case from this one by saying that there the physician admitted that, at the time of the abandonment of the plaintiff, the latter was in a dangerous condition and in dire need of immediate attention. But whether the physician admitted or denied the dangerous condition of his patient, the ultimate question was, in either event, one of fact to be determined by the jury. It was for the jury to say, from all the evidence, whether or not the appellant here was in a dangerous condition. Subsequent events rather prove that he was. Moreover, in the case at bar, the respondent not only knew that appellant's condition was serious, but actually advised that appellant be taken to the hospital. His only reason for not attending the patient, according to appellant's evidence, was that appellant was not then employed.

I think the questions of causal connection and damages cannot be decided as a matter of law, but that, under the evidence and the reasonable inferences that were capable of being drawn therefrom, those were questions for the jury to determine, under proper instructions from the court. To the extent herein noted, I dissent from the opinion of the majority.

SIMPSON and JEFFERS, JJ., concur with STEINERT, J.

MILLARD and BLAKE, JJ. (dissenting)—We dissent. The cause should be remanded with direction to enter judgment on the verdict.

278

[*En Banc.* April 17, 1943.]

ON REHEARING.

PER CURIAM.—Subsequent to the filing of the foregoing opinion, a motion for modification and clarification was filed. The court then determined that the cause should be presented to the court sitting *En Banc.* It was reargued March 10, 1943.

■ After further consideration of the issues involved, a majority of the court is of the opinion that appellants' assignments of error cannot be considered for the reason that appellants failed to comply with the requirements of Rule XVI (5), Rules of the Supreme Court, 193 Wash. 25-a, relating to the contents of briefs and reading as follows:

"Each error relied on shall be clearly pointed out and separately discussed under appropriate designated headings. Where there are several assignments presenting the same general questions, they may be discussed together. *Where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full.*" (Italics ours.)

For the reason just stated, we affirm the order granting a new trial. With this disposition of the case, it will be understood that we do not pass upon the merits of the cause, nor the correctness of the instructions given by the trial court.

GRADY, J. (dissenting)—I am unable to concur in the disposition that is now being made of the appeal in this case. When it was heard *En Banc,* eight members of the court took part in the decision thereof. In his brief, the respondent did not answer the brief of appellants on the merits, but urged that the appeal could not be considered because the appellants had not complied with paragraph 5 of Rule XVI of this court, 193 Wash. 25-a, which contains the following language: "Where

an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full."

When the case was decided, an anomalous situation developed: Three of the eight judges were of the opinion that the rule did not apply to appellants, but that the order of the lower court granting a new trial should be affirmed. Three of them were of the opinion that the rule applied, and that the appeal should not be considered, but that, as the other two judges were of the opinion the rule did not apply, they should consider the appeal on its merits, and, in doing so, were of the opinion that the questions involved were for the jury. Two of the judges were of the opinion that the rule did not apply to appellants, that the lower court erred in granting a new trial, and that judgment should be entered on the verdict of the jury. Thus, the net result was that five of the eight judges were of the opinion that the questions the trial court had held should not have been submitted to the jury, and for that reason granted a new trial, were questions for the jury, which, in effect, was tantamount to saying that the trial court was in error in granting a new trial, and that judgment should be entered on the verdict.

Faced with this situation, the appellants petitioned this court for an order directing that judgment be entered on the verdict. The respondent then filed a brief in which he reiterated his contention that the rule of court had not been complied with and, hence, the appeal should not be considered, and presented his argument on the merits of the case. The appellants filed a reply brief. The case was then heard *En Banc*, one of the judges theretofore participating being on a leave of absence and two judges in the meantime having been added to the court.

Now, a majority of the court, after the case has once been decided on the merits by five out of eight judges,

recede and cast upon the prevailing party the burden of a new trial. I would not object so much if the recession had been on the merits, as the questions involved are at least debatable, but the recession is with reference to the application to appellants of the rule of court. Judge Beals, in the opinion written by him, very clearly points out why the rule should not be held applicable to appellants when he said:

"The portion of the rule quoted was, of course, intended to render an appellant's assignment of error, when based upon an instruction of the court, together with his argument on such an assignment, readily understood without examination of the transcript. The rule is an excellent one, and has served a good purpose. We have extended the strict terms of the rule by holding that, when error is assigned upon the refusal of the court to give a requested instruction, the requested instruction must be printed in full in appellant's brief. While such a situation as that here presented seems to fall within the spirit of the rule it certainly is not included in the language used, as appellant is not basing any objection upon an instruction of the court, but on the contrary, is contending that the instructions as given were correct, and that the court did not commit error in refusing the instruction requested by respondent. Rules of court, which may be amended at any time, should not be so liberally construed as to include matters not reasonably within the language of the rule, when such construction would operate to the detriment of a litigant. Appellant bases no objection on any instruction of the court, and while the printing in appellant's brief of the instructions which the trial court held erroneous would have been advisable, appellant was not required to do this, and is entitled to have his appeal considered on the merits."

It is quite apparent that, when the rule was framed, the court had in mind the usual situation, namely, when a party to an appeal is complaining of an instruction given or refused. When rules of court are framed,

it cannot reasonably be foreseen all of the situations that may subsequently arise to which the rule should apply. But the remedy is to amend the rule in the regular way, and not to do so by interpretation. In any event, if it be amended by interpretation, it should not operate retroactively. I think the court should direct that judgment be entered on the verdict.

BLAKE and MALLERY, JJ., concur with GRADY, J.

BEALS, J. (concurring in the result)—I am still of the opinion expressed in *Gray v. Davidson, ante* p. 257.

———

[1]Reported in 130 P. (2d) 349.