[Civ. No. 17464. First Dist., Div. Two. July 3, 1958.]

EMILY HUNDLEY, Respondent, v. ST. FRANCIS HOS-
PITAL et al., Defendants; FREDERICK G. NIEMAND,
Appellant.

Peart, Baraty & Hassard and Alan L. Bonnington for Appellant.

Andrew J. Eyman, Fitz-Gerald Ames, Sr., and George Olshausen for Respondent.

DRAPER, J.—The complaint upon which this action went to trial alleged that defendant doctor "without the knowledge and consent" of plaintiff operated upon and treated her in "an unnecessary, careless and negligent manner." The evidence makes clear that plaintiff relied upon the claimed "negligent and careless" manner of operation, i.e., malpractice, as well as upon the allegation that the surgery was performed without consent and was unnecessary. In this latter respect, the basis of the claim was technically battery. (*Valdez* v. *Percy*, 35 Cal.App.2d 485, 491 [96 P.2d 142].) It is clear that there was a failure to state separately two causes of action, but since no demurrer upon this ground was filed the point need not be considered here. The action was consolidated for trial with one against a hospital. Jury verdict was in favor of the hospital, and plaintiff does not appeal. In the

action against the doctor, verdict was in favor of plaintiff, and the doctor appeals from judgment entered upon that verdict.

■ The sole expert called by plaintiff was a doctor of osteopathy. He testified that he is a graduate of the College of Osteopathic Physicians and Surgeons, that he has performed many operations of the type here involved, that the standards of skill and treatment by doctors of medicine are "identical" with such standards of osteopaths, and that he is familiar with such standards in the city and county of San Francisco. Appellant contends that this witness was not qualified as an expert, and that it was error to permit him to testify as such. It has been noted that the Board of Osteopathic Examiners issues licenses which "authorize the holders to practice medicine and surgery, the same as licensed physicians and surgeons." (*Oosterveen* v. *Board of Medical Examiners,* 112 Cal.App.2d 201, 202-203 [246 P.2d 136].)

■ In any event, "the qualification of an expert witness is a question for the sound discretion of the trial court and its ruling will not be disturbed upon appeal unless a clear abuse of it is shown." (*Sinz* v. *Owens,* 33 Cal.2d 749, 755-756 [205 P.2d 3, 8 A.L.R.2d 757]; see also *Huffman* v. *Lindquist,* 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485].) ■ No such abuse of discretion appears here.

■ Appellant contends that the evidence is insufficient to support the verdict. It is undisputed that the condition requiring surgery was a dropping of the uterus, and there is evidence also of a preoperative diagnosis of rectocele and cystocele. The operation removed the body or fundus of the uterus, the Fallopian tube and ovary (one tube and ovary had previously been removed). There is evidence that plaintiff did not consent to these excisions. There is uncontradicted evidence that pathological examination of the excised tissues revealed them to be normal. There is evidence from which the jury could find that it is not accepted surgical practice to remove such organs when there are no pathological abnormalities. Defendant offered testimony that clinical, as distinguished from pathological, findings could warrant such removal. However, the evidence of two medical witnesses is subject to a contrary view and, still further, the jury could view the testimony of appellant's witnesses as being insufficient to show the claimed clinical necessity here. There is evidence that after the surgery an opening, or fistula, existed between rectum and vagina, and that gas and fecal matter

escaped through the vagina. Appellant apparently argues that this fistula was caused by improper administration of an enema, shortly after the operation, by a hospital nurse. But this was the basis of the claim against the hospital. The jury found in favor of the hospital and against appellant. The symptoms of this fistula appeared shortly after surgery, and the evidence warrants the inference by the jury that it resulted from the surgery. The original hospital records prepared by the operating surgeon show a conflict between the diagnoses (admitting and post-surgery) and the surgery performed. This conflict was resolved in a ''corrected copy'' of the report later filed. Following the May operation, further surgery was required in August. There is testimony that appellant told respondent that she should not bear the expense of the second hospitalization, and that he would arrange that she need not pay. We have reviewed the record with care. Appellant's argument is based in part upon his unwillingness to accept the views of an expert who is not a doctor of medicine. As we have pointed out, the trial court acted within its discretion in determining that this doctor of osteopathy is qualified as an expert. We have concluded that the testimony as a whole supports the verdict.

 Appellant asserts prejudicial error in the admission of evidence relating to his use of narcotics. The operations upon respondent were performed in 1949. The case did not go to trial until early 1956, by which time appellant was confined in a state hospital, and was unable to appear. In mid-1955, hearing upon revocation of appellant's license to practice medicine had been held. Portions of the doctor's testimony before the Board of Medical Examiners were read to the jury at trial of the case at bar. Before the board, he admitted having used narcotics, that ''I realized it was more than I should have'' and that ''in the end of 1947 or the beginning of 1948'' he shifted to another narcotic, methadon. After introducing expert testimony that excessive use of narcotics would adversely affect surgical stability, reflexes and judgment, respondent offered evidence intended to show excessive use of narcotics after 1949, the date of the surgery here in issue. Some of this testimony concerned dates as late as 1955. Part of it consisted of evidence of admissions by appellant. Respondent's counsel asked question relating to records of pharmacists, apparently intended to show that prescriptions nominally for patients in fact were delivered to the doctor. The great bulk of this testimony was objected to by appellant

and in substantial part the objections were sustained. In view of the testimony that protracted use of methadon would adversely affect a surgeon's ability to operate, it seems clear that evidence which would show such a condition in appellant at the time of the surgery here in issue would be admissible. Evidence introduced did show excessive use more than a year before this surgery. Some evidence of excessive use within a reasonable period after the surgery would, on a like basis, be admissible as tending to show that the surgeon's use of narcotics continued through the period of surgical and medical treatment. Evidence of use or addiction at periods long after the operation were not relevant, and the admission thereof was error. Similarly, the attempt to question as to even later periods, and the questions as to delivery to the doctor's office of prescriptions for patients were, in the light of the complete failure to connect them with the surgery here in issue, improper. However, motions for mistrial were denied, and the matter was again before the trial court on motion for new trial. While a mere reading of the transcript might incline us to the view that these errors were prejudicial, we must recognize the established rule that the trial judge, in passing upon a motion for new trial, is in a better position that an appellate court to determine whether the jury has been prejudicially influenced. (*Music* v. *Southern Pac. Co.*, 91 Cal.App.2d 93, 98 [204 P.2d 422].) His view must be given weight in our determination. (*Tellefsen* v. *Key System Transit Lines*, 158 Cal.App.2d 243, 246-247 [322 P.2d 469]; *Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621, 629 [286 P. 456].) Here the able and experienced trial judge has determined, both at trial and on motion for new trial, that prejudice did not result. We accept his view.

 Appellant next argues that the action is barred by the statute of limitations. As pointed out above, respondent's complaint stated her cause of action upon two grounds, one negligence or malpractice and the other the removal of organs without her consent, a technical battery. In either case, the action must be brought within one year. (Code Civ. Proc., § 340, subd. 3.) Here the first operation was performed May 25, 1949, and the second August 12, 1949. This action was filed February 8, 1952. To avoid the bar of the statute, respondent pleaded and offered evidence to show that she continued as the patient of appellant until February 28, 1951, that she continued to have confidence in him, and that she did not discover until on or after that date that his negligence

had caused injury to her. There was contrary evidence, but the jury was properly instructed and its implied finding resolves this fact question in respondent's favor.

The rule is clear, as to malpractice actions, that "while the physician-patient relation continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice he continues to rely." (*Myers* v. *Stevenson,* 125 Cal.App.2d 399, 401-402 [270 P.2d 885].) Thus, in the absence of actual discovery of the negligence, the statute does not commence to run during such period (*Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908]), and this is true even though the condition itself is known to the plaintiff, so long as its negligent cause and its deleterious effect is not discovered (*Trombley* v. *Kolts,* 29 Cal.App.2d 699 [85 P.2d 541]). The evidence here fully supports the jury's implied finding that the facts necessary to commence the running of the statute, so far as it relates to malpractice, were not discovered by respondent until less than one year before the action was filed.

Appellant, however, argues that even if the malpractice action was filed in time, that for unauthorized surgery (battery) was not. Since the jury was instructed on both theories of recovery, it is argued that the verdict may be based on the theory of battery, and thus there must be a reversal. It is true that respondent's own testimony establishes that she was told the full extent of the surgery some three weeks after the operation. However, there is testimony that at the same time the doctor told respondent the excisions were necessary because of "the pathology that he found there." As already pointed out, the evidence is clear that no pathological abnormality was found in any of the tissues removed. Surgical removal of portions of the body not authorized by the patient is actionable (*Kritzer* v. *Citron,* 101 Cal.App.2d 33, 38 [224 P.2d 808]; *Markart* v. *Zeimer,* 67 Cal.App. 363, 367 [227 P. 683]) unless, in the course of the authorized surgery, a condition arose or was disclosed which necessitated the further surgery (*Valdez* v. *Percy, supra,* 35 Cal.App.2d 485, 491; see also 26 A.L.R. 1036 et seq.). Here the disclosure to respondent of the fact of surgery to which she had not consented was accompanied by a statement that the unauthorized surgery was necessitated by conditions revealed in the course of the authorized surgery. The latter representation negatived the existence of a cause of action for battery. It follows that appellant cannot contend that the statute

began to run upon the revelation that the surgery had gone beyond the scope of respondent's consent. We find no authority directly in point, but have no hesitancy in holding, upon the analogy of the malpractice cases, that the action is within time because filed within one year of respondent's discovery that the organs removed without her consent were removed unnecessarily. The court's instructions properly presented this fact question to the jury which, upon substantial evidence, determined it in favor of respondent.

What has been said disposes in large part of appellant's contentions as to the impropriety of instructions given and refused. We have examined the instructions in detail. We find no error in them, and are satisfied that as a whole they are full and fair and accurately state the law.

▮ Appellant also urges error in the court's rejection of his offer of photostatic copies of his office records. The transcript is not clear as to whether, when first offered, they were received in evidence or merely marked for identification. When the question later arose, the court ruled that they had been marked for identification only. There is reason to question whether the copies were properly identified. In any event, their exclusion is without prejudice to appellant. His deposition, which was read into evidence, discloses that he had his records before him and testified extensively from them.

▮ Appellant also urges that the verdict for $75,000 is excessive. It is well established that the amount of damages to be awarded is primarily for the trial court. (15 Cal. Jur.2d 33.) Here the jury apparently accepted respondent's testimony that her uterus and her then remaining ovary and Fallopian tube were removed without her consent and without necessity therefor. An opening between vagina and rectum was created. She also asserts that as a result of the surgery her vagina was so contracted that sexual intercourse became so painful as to be impossible. A defendant might prefer to have damages for such injuries fixed in what he assumes to be the sere and somewhat aged atmosphere of the appellate cloister rather than in the jury room. The validity of such assumption is doubtful. Its irrelevance is plain. ▮ Where the jury has fixed the award and the trial court has reviewed it upon motion for new trial, we may interfere only when it appears, as a matter of law, that the verdict was the result of passion or prejudice. (*Sexton v. Key System Transit Lines,* 144 Cal.App.2d 719, 722 [301

P.2d 612]; *Harris* v. *Lampert*, 131 Cal.App.2d 751, 752 [281 P.2d 292].) We do not find such a situation here.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied August 1, 1958, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1958. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.