[No. 3116–3.   Division Three.   December 11, 1979.]

CLIFTON BIXLER, ET AL, *Appellants,* v. HOWARD R.
BOWMAN, ET AL, *Respondents.*

*Patrick R. Acres,* for appellants.

*John Gavin* and *Gavin, Robinson, Kendrick, Redman &
Mays,* for respondents.

MUNSON, J.—This medical malpractice case was dismissed pursuant to CR 12(b)(6)[1] for failure to state a cause of action upon which relief could be granted; the court held the statute of limitation had run. The record includes only appellant Bixler's[2] amended complaint, respondent Bowman's motion to dismiss and the trial court's order.

The following alleged facts come from appellant's amended complaint: Dorothy Bixler had been a patient of Dr. Howard Bowman for 18 years. On January 23, 1975, she complained to him of a lump in her right breast. Dr. Bowman prescribed a course of self–examination and advised her to consult him as she felt necessary. On April 29, 1975, she again consulted Dr. Bowman about the lump and was again advised to continue self–examination. On August 4, 1975, Mrs. Bixler consulted another doctor who promptly diagnosed her condition as a "probably malignant tumor." Three days later, a radical mastectomy was performed to remove her right breast; she received follow–up radiation and chemotherapy treatment. Approximately a year and a half later, because of the spread of the cancer, a radical mastectomy was performed to remove her left breast. Appellant alleges Dr. Bowman was negligent for failure to diagnose her condition. Her complaint was filed June 8, 1978.[3]

The trial court dismissed Mrs. Bixler's complaint, apparently finding the 3–year statute of limitation had run from the time of her last visit to Dr. Bowman's office on April 29,

---

[1]When a cause of action has been dismissed for failure to state a claim for which relief could be granted, the only question before this court is whether it can be said that there is no state of facts which the plaintiff could prove entitled her to relief under her claim. "The factual allegations of the complaint must be accepted as true for the purpose of the motion." *Grimsby v. Samson*, 85 Wn.2d 52, 55, 530 P.2d 291, 77 A.L.R.3d 436 (1975). *See also Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 545 P.2d 13 (1975).

[2]Although the marital communities of both parties are included in this action, we refer to Mrs. Bixler as appellant and to Dr. Bowman as respondent.

[3]The original complaint is not a part of the record; however, the briefs of both appellant and respondent state that the original complaint was filed June 8, 1978.

1975. She contends that she was under his continuous care until she consulted another doctor. Since her action was filed June 8, 1978, it was within the 3–year statute of limitation, *i.e.*, the statute began to run on August 4, 1975. To the contrary, Dr. Bowman contends the statute of limitation commenced April 29, 1975—the last date on which Mrs. Bixler consulted him; thus her action was barred.

The question presented is whether a doctor's continuous treatment of a specific condition terminates on the date of a patient's last consultation when that condition still exists and neither the patient nor the doctor has affirmatively indicated the relationship is terminated. We find, given the limited facts here, that the date the physician–patient relationship terminated is a question of fact, which precludes granting respondent's motion.

The statute of limitation governing this action provided:

> Any civil action for damages against . . . a physician . . . based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, . . .

Laws of 1971, ch. 80, § 1, p. 194–95 (RCW 4.16.350). The statute was amended in 1975 to include omissions as well as wrongful acts. Appellant argues that Dr. Bowman's failure to diagnose was an omission not covered by the above statute and therefore the prior statute, RCW 4.16.080(2), and its 3–year statute of limitation control.[4] We find no merit to this contention. The legislature passed the specific medical malpractice statute in 1971 which included the "professional negligence" of a physician; it could not have been the intent of the legislature to cover wrongful acts in one statute and omissions in a prior statute. We find no distinction on a negligence theory between acts and omissions nor does appellant cite any authority for her position.

---

[4] "Within three years:

" . . .

"(2) An action . . . for any other injury to the person or rights of another not hereinafter enumerated".

■■ The crucial question is when the 3–year statute began to run. In *Samuelson v. Freeman,* 75 Wn.2d 894, 900, 454 P.2d 406 (1969), the court stated:

> [I]f malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, *the statute does not begin to run until the treatment for that particular illness or condition has been terminated.*

(Italics ours.) *See* Annot., *When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner,* 80 A.L.R.2d 368 (1961). Here, at the time that Mrs. Bixler saw Dr. Bowman on April 29, 1975, there is no indication that either patient or doctor had terminated the physician–patient relationship for the lump in her breast. He advised her on that date to continue self–examination and consult with him again as necessary. In *Gray v. Davidson,* 15 Wn.2d 257, 266-67, 130 P.2d 341, 136 P.2d 187 (1942), the plaintiff alleged abandonment by his doctor. The court stated that when a doctor undertakes to treat a patient, the doctor has a duty to continue to:

> devote his best attention to the case until either medical attention is no longer needed, he is discharged by the patient, or he has given the patient reasonable notice of his intention to cease to treat the patient, so that another physician may be obtained.

In two other cases in which continuous negligent treatment was alleged, the date on which the statute began to run was when the patient consulted another doctor. *See Hotelling v. Walther,* 169 Ore. 559, 130 P.2d 944, 144 A.L.R. 205 (1942); *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966).

While the physician–patient relationship continues, the patient is not ordinarily put on notice of the negligent conduct of the doctor upon whose skill, judgment and advice he or she continues to rely. *See Hundley v. St. Francis Hosp.,* 161 Cal. App. 2d 800, 327 P.2d 131, 80 A.L.R.2d 360 (1958); *Myers v. Stevenson,* 125 Cal. App. 2d 399, 270 P.2d 885 (1954).

Where a doctor examines a patient for whom he has been the personal physician for 18 years and advises her to continue a course of self-examination and consult him as she feels necessary, we cannot say as a matter of law that her treatment ceases with her last visit. Obviously, the decision to cease treatment can be mutual between physician and patient or unilateral. Here, it appears Mrs. Bixler decided unilaterally to terminate that treatment, but *when* that decision was made is not in the record before us.[5]

Because Mrs. Bixler's decision to cease consulting with Dr. Bowman could have been made after June 8, 1975, thereby bringing the filing of her original complaint on June 8, 1978, within the 3-year statute of limitation, there are facts upon which Mrs. Bixler would be entitled to relief.

The order of dismissal is reversed and the matter remanded for further proceedings.

GREEN, C.J., and MCINTURFF, J., concur.

Reconsideration denied January 14, 1980.

Review granted by Supreme Court March 7, 1980.

---

[5]Likewise, whether *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979), is applicable cannot be determined from the record in its present state.