[No. 46813.   En Banc.   August 7, 1980.]

CLIFTON BIXLER, ET AL, *Respondents,* v. HOWARD R. BOWMAN, ET AL, *Petitioners.*

*William H. Mays* and *Rodney K. Nelson* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for petitioners.

*Patrick Acres* and *Richard E. Schultheis* (of *Acres & Schultheis*), for respondents.

DOLLIVER, J.—Plaintiffs' medical malpractice complaint was dismissed for failure to state a cause of action. CR 12(b)(6). The trial court held the statute of limitations had run; the Court of Appeals reversed. *Bixler v. Bowman*, 24 Wn. App. 815, 604 P.2d 188 (1979). Plaintiffs' amended complaint alleged the following facts:

Plaintiff Dorothy Bixler had been a patient of defendant Dr. Howard Bowman since 1957. On January 23, 1975, she complained to him about a lump in her right breast. Dr. Bowman prescribed a course of self-examination and advised her to consult him as she felt necessary. Mrs. Bixler again consulted Dr. Bowman about the lump on April 29, 1975. The doctor advised her to continue her self-examination. She did not see him again.

On August 4, 1975, Mrs. Bixler went to another doctor who promptly diagnosed her condition as a "probably malignant tumor". Three days later, a radical mastectomy was performed to remove her right breast. After the operation she received radiation and chemotherapy treatment.

Nevertheless, the cancer spread and on April 1, 1977, it was necessary to perform a radical mastectomy to remove her left breast.

On June 8, 1978, Mrs. Bixler filed a medical malpractice action alleging that Dr. Bowman was negligent in failing to diagnose her condition as cancer and that his failure to provide reasonable treatment was the proximate cause of the spreading of the cancer.

Plaintiff asserts the statute of limitations began to run on August 4, 1975, the date of her first visit to another physician. Defendant contends the statute began to run on April 29, 1975, the date of plaintiff's last visit to him. We agree with defendant, reverse the Court of Appeals and reinstate the order of dismissal of the trial court.

The statute governing is the 1971 act, Laws of 1971, ch. 80, § 1, p. 194 (RCW 4.16.350), which reads:

> Any civil action for damages against . . . a member of the healing arts including, but not limited to, a physician licensed under chapter 18.71 RCW . . . based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, or (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, whichever period of time expires last.

To determine the applicability of this statute, it is necessary to review the legislative and case history prior to its passage. Before 1971, there was no separate medical malpractice statute of limitations; these cases fell within the limitation statutes applicable to all tort claims. Actions for injury to the person were limited to 3 years after the "cause of action shall have accrued". RCW 4.16.010; RCW 4.16-.080.

In *Lindquist v. Mullen,* 45 Wn.2d 675, 277 P.2d 724 (1954), the surgeon left inside a patient a sponge which was not discovered until 7 years after the operation. The court held the cause of action accrued at the time of the wrongful act that caused the injury and denied recovery.

The rigid application of the statute of limitations in *Lindquist* was overruled in *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969). This case held that in medical malpractice cases the cause of action accrues when the injury was discovered or reasonably should have been discovered rather than at the time of the alleged wrongful act. A month later, in *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969), the court set forth the continuing course of treatment rule. That doctrine stated:

> [I]f malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, the statute does not begin to run until the treatment for that particular illness or condition has been terminated.

*Samuelson,* at 900. The Court of Appeals, relying on *Samuelson,* held it could not find as a matter of law that plaintiff's treatment ceased with her last visit.

■ What is the impact of Laws of 1971, ch. 80, § 1, p. 194 (RCW 4.16.350)? Legislative history indicates the legislature was well aware of our cases concerning the statute of limitations for medical malpractice. House Journal, 42d Legislature (1971), at 598–600; *see Teeter v. Lawson,* 25 Wn. App. 560, 610 P.2d 925 (1980). We presume the legislature to be familiar with past judicial interpretation of statutes. *State v. Fenter,* 89 Wn.2d 57, 569 P.2d 67 (1977).

The 1971 statute was significantly different from the previous statute of limitations and our interpretation of that statute. The concept of the accrual of a cause of action contained in the general statute of limitations was eliminated. In its place is language that any action shall commence within 1 year of the time plaintiff discovers the injury or condition was caused by the wrongful act. The rule in *Ruth v. Dight, supra,* thus is limited to 1 year from the date of actual discovery of the injury or condition. (Laws of 1975, 2d Ex. Sess., ch. 56, § 1, p. 214–15, broadened the statute to "discovered or reasonably should have discovered".) Since plaintiff alleges to have discovered her condition on August 4, 1975, under this provision of the

statute, she had 1 year to preserve her action. She did not do so.

■ Likewise, the 1971 statute substantially modified the continuing course of treatment rule formulated in *Samuelson v. Freeman, supra.* Under *Samuelson,* the cause of action would not accrue until, when there was a continuous and substantially uninterrupted course of treatment for a particular illness, the treatment for the particular illness or condition had been terminated. The 1971 statute restricts the commencement of the action to within "three years from the date of the *alleged wrongful act*". (Italics ours.) The concept of the termination of a "continuing course of treatment" has been succeeded by the designation of a "date of the alleged wrongful act".

■ The date of the alleged wrongful act was April 29, 1975, the last time plaintiff consulted with defendant. Plaintiff argues that, even if the date of the *alleged wrongful act* is April 29, 1975, what actually occurred was a *wrongful omission* and that the discovery of an alleged omission continues to be governed by RCW 4.16.080(2). Since plaintiff did not discover the "omission" of defendant until August 4, 1975, she claims the statute did not run until August 4, 1978. Plaintiff offers no cases where this distinction has been made in medical malpractice cases (*see generally* 80 A.L.R.2d 368, 374 (1961)), nor has it been made by us. *See Samuelson v. Freeman, supra.* It is implausible to believe the legislature, in enacting a specific medical malpractice act, would intend the acts of a physician to be covered by one statute while omissions would be covered by another. Finally, the 1971 act requires "*Any* civil action for damages against . . . a physician . . . based upon alleged professional negligence" to be brought within the designated time limit. (Italics ours.)

Plaintiff had 1 year from the date of discovering the alleged malpractice of defendant or 3 years after the actual act, whichever was later, to bring her action. The legislature is empowered to set these limitations. *See Ruth v. Dight,*

*supra.* Since she failed to act within the statutory limitation, the action of plaintiff is barred.

Reversed.

UTTER, C.J., and STAFFORD, BRACHTENBACH, and HICKS, JJ., concur.

ROSELLINI, J. (dissenting)—The amended complaint in this action, the allegations of which must be taken as verities for purposes of the motion to dismiss, stated:

> Dorothy Bixler had been a regular patient of defendant doctor since 1957. On January 23, 1975, she complained to him about a lump in her right breast that ultimately proved cancerous. During the period from January 28, 1975 until August 4, 1975, defendant doctor negligently provided a continuous and substantially uninterrupted course of treatment to Dorothy Bixler regarding her cancer condition by prescribing to her a continuing course of conservative treatment consisting only of self observation by her of her breast on behalf of defendant doctor and directing her to continue to consult with him as she felt necessary. She consulted with him pursuant to this prescription on April 29, 1975, and was directed to continue such treatment which she did until she terminated it on August 4, 1975, when she saw a second physician. The treatment was improper and ineffective by defendant doctor and a proximate cause of the worsening of her cancer.
>
> During the entire and uninterrupted course of the above prescribed treatment of Dorothy Bixler until August 4, 1975, the defendant doctor negligently failed to perform reasonably necessary diagnostic procedures to inform himself as to the facts and circumstances indicating the presence or absence of a cancer in her with a resulting failure to provide reasonable treatment to her.
>
> The foregoing were proximate causes of the worsening of the Plaintiff's cancer causing her damage through failure to provide reasonable treatment.

Thus, the allegations of the complaint were that the plaintiff suffered injury as a result of the defendant's continued course of negligence in failing to utilize reasonable diagnostic procedures. Obviously, the alleged negligence of

the doctor did not take the form of a single act or omission, but was a continuing one. The statute does not expressly provide for negligence which consists of failure to act, rather than affirmative action. Inasmuch as medical negligence is as likely to be the one as the other, it cannot be assumed that the legislature intended to make no provision for bringing an action where the negligence consists of nonaction. The majority recognizes this and is willing to give the words "wrongful act", as contained in RCW 4.16.350 at the time this suit was brought, a meaning broad enough to include omissions as well as acts. However, it is unwilling to recognize that the defendant's wrongful "act" may in fact be a series of acts or omissions.

This court took account of such situations in *Samuelson v. Freeman*, 75 Wn.2d 894, 454 P.2d 406 (1969), relied upon by the Court of Appeals in reaching its decision. We said there, at page 900:

> [I]f malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, *the statute does not begin to run until the treatment for that particular illness or condition has been terminated.*

(Italics mine.) *See* Annot., *When Statute of Limitations Commences To Run Against Malpractice Action Against Physician, Surgeon, Dentist, or Similar Practitioner*, 80 A.L.R.2d 368 (1961).

The question answered there was: Does the statute begin to run from the time the treatment began, or when it ended? Because a patient is not ordinarily put on notice of the negligent conduct of the doctor upon whose skill, judgment and advice he relies while the relationship continues, it is just that the period should not begin to run until the treatment is terminated. *See Hundley v. St. Francis Hosp.*, 161 Cal. App. 2d 800, 327 P.2d 131 (1958); *Myers v. Stevenson,* 125 Cal. App. 2d 399, 270 P.2d 885 (1954).

It was for this reason that we decided in *Samuelson v. Freeman, supra,* that the period of limitation should begin to run at the conclusion of the treatment.

The statute offers no answer to the question but leaves the meaning of the words "wrongful act" to be determined by the court. I agree with the majority that the legislature was presumably aware of this court's decision in the *Samuelson* case, but I do not agree with its conclusion regarding the legislative response. In order to reject the holding of that case, it would have had to use language manifesting an intent that where there is continuing negligence on the part of the defendant, the statute runs from the time the negligence began, rather than the time when it ended. In fact, the majority has concluded that the legislature intended the relevant time to be the time of the last wrongful act. Our disagreement, then, is essentially concerned with the date on which the last act occurs, where a continuous course of treatment is involved and the negligence consists of acts of omission, rather than commission. The majority opinion necessarily concludes that it occurs on the last day on which the patient visits the doctor. I do not subscribe to that evaluation of the relationship between doctor and patient. It places on the patient the burden of immediately seeking the advice of another doctor when her doctor has prescribed a passive course of treatment. That is not realistic.

In *Gray v. Davidson,* 15 Wn.2d 257, 130 P.2d 341 (1942), the plaintiff alleged abandonment by his doctor. The court stated that when a doctor undertakes to treat a patient, the doctor has the duty to

> devote his best attention to the case until either medical attention is no longer needed, he is discharged by the patient, or he has given the patient reasonable notice of his intention to cease to treat the patient, so that another physician may be obtained.

*Gray,* at 266–67.

I accept this as a fair statement of the doctor's duty. That being the case, every day that the defendant failed to contact the plaintiff and advise her to come in for tests was a day of continuing acts of negligent omission. His duty continued until she manifested an intent to rely on other

medical help by seeking the advice of another doctor. Thus, as I view the situation, the day of the defendant's last wrongful act was August 3, 1975, a date within the period of limitation.

The result reached by the majority in this case is no less a construction of an ambiguous statute than is my dissent. The question is, Which of these constructions accords more nearly with reality and with the probable legislative intent? I cannot believe that the legislature intended to require a patient to perceive his cause of action while still relying on his doctor's skill and judgment. There is nothing in the act to reflect such an intent. The words "wrongful act" give no clue to the legislative intent. I would presume that the legislature, not having rejected it, intended to let the rule of *Samuelson v. Freeman, supra,* stand.

In my judgment, the Court of Appeals was correct upon this point. I think it was mistaken, however, in holding that the question of when the doctor–patient relationship was terminated is a question still to be determined. The defendant has accepted the allegations of the complaint as true for the purposes of this motion. They show that the relationship was not terminated by any act of either the doctor or the patient before August 4, 1975. Consequently, the statute of limitations had not run.

I would affirm the reversal of the trial court's decision and remand the case for further proceedings consistent with these views.

WRIGHT, HOROWITZ, and WILLIAMS, JJ., concur with ROSELLINI, J.

Reconsideration denied September 26, 1980.