953 P.2d 1162 (1998)
134 Wash.2d 854
Robin L. GUNNIER, individually and as guardian for Joshua Hastings, Jamie Gunnier, Edward Gunnier, Jr., and Leah Gunnier, her minor children, Appellant,
v.
YAKIMA HEART CENTER, INC., P.S., and Richard K. Spiegel, M.D., Respondents, and
John F. Harrington, M.D., Defendant.
No. 65253-8.
Supreme Court of Washington, En Banc.
Argued February 10, 1998.
Decided April 16, 1998.
*1163 Sullivan & Golden, Donovan Flora, Seattle, for Appellant.
Williams, Kastner & Gibbs, Mary H. Spillane, Seattle, West H. Campbell, Yakima, for Respondents.
MADSEN, Justice.
At issue in this medical malpractice action is whether the statute of limitations bars plaintiff's suit. Plaintiff urges the court to hold that the three-year limitations period in RCW 4.16.350(3) does not begin to run until injury occurs, regardless how long it has been since the act or omission causing the injury took place. She alternatively argues that the statutes of limitations should be equitably tolled or that the intentional concealment tolling provision in RCW 4.16.350(3) applies. We affirm the trial court's summary judgment of dismissal on the grounds that the statute of limitations bars plaintiff's suit.

Facts
On March 9, 1983, Ms. Gunnier saw Dr. Richard K. Speigel, a cardiologist. She had been referred to Dr. Speigel because she experienced a rapid heart beat. Dr. Speigel's evaluation included interpretation of an echocardiogram, which he recorded in a report stating, "Study suggests bicuspid aortic valve[,]" a statement he also included in the *1164 "final impression" section of the report. Clerk's Papers (CP) at 406(B). Dr. Speigel also dictated an office chart note stating in part that "The closure of the aortic valve was somewhat eccentric, suggesting the presence of bicuspid aortic valve." CP at 405. Dr. Speigel diagnosed and treated paroxysmal atrial tachycardia (a condition unrelated to a bicuspid aortic valve). He advised Ms. Gunnier that if she had recurring episodes of rapid heart beat, she should contact him, and in any event she should return in a year. Ms. Gunnier contacted his office later that month because a drug he had prescribed had unpleasant side effects, and he reduced the dosage. She stopped taking the drug when the prescription ran out. The March 9 visit was the only time Ms. Gunnier saw Dr. Speigel.
Ms. Gunnier maintains Dr. Speigel did not disclose to her that the echocardiogram suggested a bicuspid aortic valve. Dr. Speigel maintains he considered the echocardiogram to be a normal variant and not diagnostic of a bicuspid aortic valve. He states he did not believe, suspect, diagnose, or have concerns that Ms. Gunnier had a bicuspid aortic valve.
Ms. Gunnier did, in fact, have a bicuspid aortic valve. In February 1991, she had some dental work done. In March 1991, she was admitted to a hospital for treatment of endocarditis, an infection in the heart which allegedly occurred because she had a bicuspid aortic valve but had not taken antibiotics before undergoing the dental work. She was treated for the infection and then discharged. On April 20, 1991, she was readmitted because of a clot in her left leg, which had broken off the heart infection. The next day she suffered a stroke as a result of pieces of the clot traveling to her brain. She remained in the hospital for rehabilitation until June 27, 1991.
During her recovery, Ms. Gunnier wondered why the 1983 echocardiogram had not revealed the bicuspid aortic valve. She went to Dr. Speigel's office on July 19 or August 1, 1991, and saw the statements there regarding bicuspid aortic valve. On August 2, 1991, she had surgery to replace the defective valve. In March 1992, Ms. Gunnier saw Dr. Harrington, her obstetrician, and told him that she would not have had the stroke if she had been told about the heart condition and had been given antibiotics before undergoing dental work.
On July 8, 1993, Ms. Gunnier, individually, and as guardian ad litem for her four children, filed suit against Dr. Speigel and Yakima Heart Center, Inc., P.S., claiming they were negligent in their care and treatment of her in March 1983 and this negligence proximately caused the heart infection and stroke.[1] Dr. Speigel and the Center moved to dismiss the action on the ground that Ms. Gunnier failed to bring the action within eight years of the alleged negligence and, accordingly, the eight-year statute of repose in RCW 4.16.350(3) barred her personal claim against them. They also argued that the claim was barred by the three-year and one-year limitations periods in RCW 4.16.350(3). The trial court indicated it was inclined to hold the eight-year statute of repose unconstitutional as applied to acts or omission which do not cause harm within eight years. Defendants therefore withdrew that portion of their motion to dismiss based upon the eight-year statute of repose, and sought partial summary judgment based upon the three-year and one-year limitations periods in RCW 4.16.350(3). There is no dispute that Ms. Gunnier did not file her action within one year of the date she discovered her cause of action. She maintains, however, that the three-year period commences to run only when the cause of action accrues and this did not occur in her case until she was injured. Defendants maintain that the three-year period begins to run from the date of the alleged wrongful act or omission and not from the date of injury. The trial court granted the defense motion for summary judgment and directed entry of final judgment under CR 54(b) (the summary judgment did not dispose of the children's loss of parental consortium claims).
*1165 We granted Ms. Gunnier's motion for direct review.

Three-year statute of limitations
Review of summary judgment is de novo, with the appellate court engaging in the same inquiry as the trial court. E.g., DeWater v. State, 130 Wash.2d 128, 133, 921 P.2d 1059 (1996). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
RCW 4.16.350(3) provides that a medical malpractice action
shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission: PROVIDED, That the time for commencement of an action is tolled upon proof of fraud [or] intentional concealment....
Plaintiff filed suit over eight years after Dr. Speigel's alleged negligent act or omission. However, the eight-year statute of repose is not at issue because it has been withdrawn as a defense. Plaintiff discovered the facts underlying all the elements of her cause of action over a year before she filed suit, but she did not file her action within the one-year discovery period provided by the statute. Further, she filed suit well over three years after the alleged negligence. She claims, however, that the three-year limitation period in RCW 4.16.350(3) must be read to mean that the three-year period runs from the time she has suffered appreciable harm, and not from the alleged negligent act or omission.
Plaintiff argues that the three-year period is a statute of limitations, and that a statute of limitations cannot begin to run until a cause of action accrues. An action accrues, generally speaking, when a party has the right to apply to a court for relief. Malnar v. Carlson, 128 Wash.2d 521, 529, 910 P.2d 455 (1996). Injury is one of the elements of a negligence cause of action. In Gazija v. Nicholas Jerns Co., 86 Wash.2d 215, 219, 543 P.2d 338 (1975) the court said that "[u]ntil a plaintiff suffers appreciable harm as a consequence of negligence, he cannot establish a cause of action." (Gazija is not a medical malpractice case.) Plaintiff reasons that until she suffered injury, her cause of action did not accrue, and therefore, the three-year period did not begin to run until 1991 when her injury occurred.
The plain language of RCW 4.16.350(3), its history, and judicial construction indicate to the contrary: the three-year period commences to run at the time of the alleged wrongful act or omission causing the injury. RCW 4.16.350(3) provides a statute of limitations with alternative periods in which to file the action, expiration of the later of "3 years after the last negligent act or 1 year after discovery of the negligence...." Caughell v. Group Health Coop. of Puget Sound, 124 Wash.2d 217, 237 n. 6, 876 P.2d 898 (1994). The three-year period begins to run from "the act or omission alleged to have caused the injury or condition...." RCW 4.16.350(3). This language clearly does not provide that the limitations period commences with accrual of a cause of action.
Further, history indicates that the Legislature intended to depart from common law notions of accrual of a tort cause of action. Medical malpractice actions which preceded enactment of the medical malpractice statute of limitations were governed by the limitations period in the general tort statute of limitations. RCW 4.16.080(2) provided that "[a]n action for ... any ... injury to the person or rights of another not hereinafter enumerated" had to be commenced within three years. Former RCW 4.16.010 provided that "[a]ctions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute...." Decisions at the time were consistent with the accrual rule plaintiff urges here: negligence which does not produce harm is not actionable, and a cause of action could not be maintained until *1166 injury had been sustained. However, once injury was sustained, whether known to plaintiff or not, the limitations period began to run. E.g., Lindquist v. Mullen, 45 Wash.2d 675, 677, 277 P.2d 724 (1954), overruled by Ruth v. Dight, 75 Wash.2d 660, 453 P.2d 631 (1969).
Under former law, harsh results ensued in some cases because an individual might not know he or she had been injured until after the statute of limitations cut off legal remedies. In overruling Lindquist, the court noted that a goal of the common law is "to provide a legal remedy for every genuine wrong," while recognizing at the same time that "compelling one to answer stale claims in the courts is in itself a substantial wrong." Ruth, 75 Wash.2d at 665, 453 P.2d 631. An adult with a "justifiable grievance" usually knows it, and "the law affords him ample opportunity to assert it in the courts." Id. However, fundamental fairness is implicated when in the usual course of events a person would not know he had been injured until well after the statute of limitations ran. Id. Because the Legislature had not definitively addressed this concern, the court reasoned, it was for the judiciary. Id.
The court overturned Lindquist, and construed former RCW 4.16.010 and RCW 4.16.080(2) to mean that the cause of action might accrue upon discovery of the injury. Ruth, 75 Wash.2d at 667-68, 453 P.2d 631. This effectively created a three-year discovery rule. The Legislature responded to Ruth in 1971 by enacting RCW 4.16.350, setting forth a discovery rule which required commencement of the action within one year of actual discovery that the injury was caused by the wrongful act. Laws of 1971, ch. 80, § 1. The statute reduced the discovery rule period from three years as held in Ruth to one year. The new statute also provided for a three-year limitations period, but stated that this period began to run "from the date of the alleged wrongful act...." Laws of 1971, ch. 80, § 1. Then, as now, a plaintiff had to commence the action by the expiration of the later of the two periods. Medical malpractice actions were no longer subject to the accrual rule expressed in former RCW 4.16.010 which applied to RCW 4.16.080(2).
This court addressed the 1971 statute, stating:
The 1971 statute was significantly different from the previous statute of limitations and our interpretation of that statute. The concept of the accrual of a cause of action contained in the general statute of limitations was eliminated. In its place is language that any action shall commence within 1 year of the time plaintiff discovers the injury or condition was caused by the wrongful act.
Bixler v. Bowman, 94 Wash.2d 146, 149, 614 P.2d 1290 (1980); see also Teeter v. Lawson, 25 Wash.App. 560, 563, 610 P.2d 925 (1980). Thus, accrual, in the traditional sense, is not the test of when the three-year limitations period begins to run in the case of medical malpractice. Instead, either the wrongful act or omission, or discovery, will commence the running of the alternate limitations periods in RCW 4.16.350(3).
The language in the current version of the statute resulted from amendment in 1976, which provided that the three-year period runs from the act or omission alleged to have caused the injury or condition rather than from the time of the "wrongful act," and altered the discovery rule to provide for a one-year period from the date of actual discovery or the date the plaintiff reasonably should have discovered the injury or condition was caused by the alleged wrongful act or omission, rather than just from the time of actual discovery. Laws of 1975-76, 2d Ex. Sess., ch. 56, § 1.
Despite the plain language of the statute, plaintiff advances several arguments in support of her claim that accrual of the cause of action commences the running of the three-year period. She maintains that when this court said in Bixler that the concept of accrual was replaced by the discovery rule provision, this meant only that the court's construction of accrual in former RCW 4.16.010 in Ruth, 75 Wash.2d 660, 453 P.2d 631, was replaced by the express discovery rule provision in RCW 4.16.350(3). Plaintiff reads Bixler too narrowly. The court in Ruth construed former RCW 4.16.010 and RCW *1167 4.16.080(2), which applied to all medical malpractice actions. With enactment of RCW 4.16.350, former RCW 4.16.010, and RCW 4.16.080(2) no longer apply to such actions. Bixler expressly stated that the general statute of limitations, and its accrual rule, no longer apply. In light of this, Bixler`s comment that the accrual rule addressed in Ruth was replaced by the discovery rule in the statute is broader than plaintiff reads it.
Plaintiff also relies upon RCW 4.16.005, which, like former RCW 4.16.010 (repealed by Laws of 1984, ch. 76, § 9), states a general rule that the limitations periods in the chapter run from the time "the cause of action has accrued." However, RCW 4.16.005 begins "[e]xcept as otherwise provided in this chapter, and except when in special cases a different limitation is prescribed by a statute not contained in this chapter" the accrual rule applies. (Emphasis added.) As explained, RCW 4.16.350(3) expressly departs from the accrual rule.
Plaintiff also argues that because RCW 4.16.350(3), when enacted, used the term "wrongful act," it reflected Lindquist's analysis that "the cause of action accrues at the time of the wrongful act that caused the injury" (emphasis added) but "a cause of action cannot accrue until injury has been sustained." Lindquist, 45 Wash.2d at 676-77, 277 P.2d 724. However, the Legislature markedly changed statutory provisions applicable to medical malpractice actions by providing for a discovery rule which, as this court reasoned, replaced the former concept of accrual. Moreover, when the statute was amended in 1976, the language was changed so that the three-year period runs from the time "of the act or omission alleged to have caused the injury or condition[.]" RCW 4.16.350(3).
Plaintiff also urges that the statute must be construed to provide for the running of the three-year period from the time of accrual because otherwise absurd results occur, i.e., the barring of a cause of action which has never existed. The statute would operate as a statute of repose, she urges, rather than as a statute of limitation. Generally speaking, a statute of limitations bars an already accrued cause of action after a certain period of time, while a statute of repose terminates a right of action after a specific period of time regardless of whether it has accrued (and regardless whether injury has occurred). Rice v. Dow Chem. Co., 124 Wash.2d 205, 211-12, 875 P.2d 1213 (1994). However, plaintiff's argument fails to acknowledge that RCW 4.16.350(3)'s statute of limitations is written in the alternative. Plaintiff attempts to argue her case solely on the basis of the three-year provision without regard to the discovery provision. A plaintiff has either three years from the date of the act or omission allegedly causing the injury, or one year from the date of discovery. The three-year period cannot, then, act to bar a cause of action on the ground that an injury does not occur during the three years, because the plaintiff still has the one-year discovery period in which to file suit. Plaintiff's argument requires reading the three-year provision of the statute in isolation without regard to the discovery rule provision, contrary to the language and intent of the statute. As plaintiff's counsel acknowledged during oral argument, the one-year discovery period is not an unreasonably short period of time in which to file suit.
Finally, plaintiff maintains that because the statute provides that the three-year period runs from the date of "the act or omission alleged to have caused the injury or condition," there must be an injury before the act or omission becomes meaningful because an act or omission in itself is not actionable and should not trigger a limitations statute. RCW 4.16.350(3) (emphasis added). If the Legislature had intended that the three-year period commenced only when injury occurred it could have provided language to that effect, either by stating that the action must be commenced within 3 years, which would invoke application of the accrual rule in RCW 4.16.005, compare RCW 4.16.040, or by expressly providing a traditional accrual rule in the statute. The Legislature did not do so. Moreover, plaintiff's argument again fails to account for the alternative provisions in RCW 4.16.350(3), one of which provides for a one-year-from-discovery period in which to file.
*1168 The three-year limitations period in RCW 4.16.350(3) begins to run from the date of the act or omission alleged to have caused injury. That three-year period may lapse before injury occurs. This conclusion is neither absurd nor harsh, as a plaintiff still has the alternative limitations period of the one-year discovery rule in which to file suit.

Equitable tolling
Plaintiff argues that if the court construes RCW 4.16.350(3)'s three-year period to run from the date of the act or omission, rather than from when her injury occurred, the statute of limitations should be equitably tolled.
This court has required, however, that before equitable tolling will apply, plaintiff must act with diligence in pursuing a cause of action. Douchette v. Bethel School Dist. No. 403, 117 Wash.2d 805, 812, 818 P.2d 1362 (1991). Other courts, applying varying theories of equitable tolling, also require that before a statute of limitations will be tolled a plaintiff must demonstrate that he or she could not by the exercise of reasonable diligence have discovered essential information bearing on the claim. E.g., Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452 (7th Cir.1990); Supermail Cargo, Inc., v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995). In this case, plaintiff discovered her cause of action in 1991, but did not file suit until more than a year later, in July 1993. Her suit would have been timely had she filed within the one-year-from-discovery period, when she knew all the facts underlying her cause of action. Under these circumstances, she did not act with diligence in pursuing her claim, and equitable tolling should not be applied.
Plaintiff also contends that regardless of the equitable tolling doctrine, the court should hold that the statute of limitations did not commence to run upon Dr. Speigel's failure to tell her about the echocardiogram results because a positive rule of law prevented her from filing suit. She relies upon cases such as Seamans v. Walgren, 82 Wash.2d 771, 514 P.2d 166 (1973), where the statute of limitations was tolled where plaintiff was precluded from filing suit because the defendant was a member of the state Legislature and was immune from civil process, and In re Estate of Bailey, 178 Wash. 173, 34 P.2d 448 (1934), where plaintiff was prevented from filing suit by a decree of distribution of an estate because the funds had escheated to the state, and the statute of limitations was suspended until an appropriation act refunding the funds to the administrator became effective.
Here, plaintiff maintains, the eight-year statute of repose in RCW 4.16.350(3) prevented her from filing suit even after her cause of action accrued, and did so until Dr. Speigel waived the repose provision defense. However, as defendants argue, if the existence of a statute of repose warrants tolling of a statute of limitations, the repose provision would be meaningless. In any event, because the statute of repose has been waived, what really bars this suit is plaintiff's failure to file within one year beginning in 1991 when she indisputably knew of the facts comprising her cause of action. She was not prevented by any positive rule of law from filing within one year of her discovery of her cause of action. Equitable tolling is not appropriate in this case.

Intentional concealment
Plaintiff contends that material questions of fact remain as to whether Dr. Speigel intentionally concealed information from her about her heart defect, and thus questions of fact remain about whether the statute of limitations should be tolled under the proviso in RCW 4.16.350(3) which states that "the time for commencement of an action is tolled upon proof of fraud [or] intentional concealment...." Plaintiff reasons that intentional concealment must mean something other than fraud, since both are mentioned in the proviso, and this means that unlike fraud, the Legislature did not intend that a plaintiff prove intent to deceive or any affirmative act by the defendant to conceal information. She reasons that in light of a physician's fiduciary relationship with a patient, the simple nondisclosure of facts can constitute intentional concealment.
*1169 The only authority she cites which concerns similar language is Smith v. Boyett, 908 P.2d 508, 511-12 (Colo.1995), where the court addressed a tolling provision applicable when "the act or omission which gave rise to the cause of action was knowingly concealed by the person committing such act or omission...." Plaintiff relies upon the Colorado court's reasoning that the plaintiff has only to set forth facts from which a trier of fact could reasonably conclude that defendant knew of his or her error and then concealed that knowledge from the plaintiff. Id. at 513. Plaintiff then reasons that under Washington law, Dr. Speigel had a duty to disclose all material facts to her, and that here factual questions remain as to whether Dr. Speigel was aware of a material fact that he failed to disclose to her, precluding summary judgment.
As defendants point out, however, the Colorado court also said that the purpose of the knowing concealment exception is to prevent doctors from intentionally concealing facts that would apprise a plaintiff of a claim for relief, and required that plaintiff prove that the doctor knew he had committed a negligent act or omission and then intentionally made a material misrepresentation or failed to disclose material information which impeded the discovery of negligence. Id. Thus, the Colorado case does not support plaintiff's theory that the failure to disclose the echocardiogram results constitutes intentional concealment for purposes of tolling the statute of limitations. Plaintiff has not alleged any facts suggesting Dr. Speigel knew or even suspected he was negligent. There is no allegation he misinformed her or hampered her discovery of possible negligence. When she went to his office over eight years after her one visit with him, her medical records were intact and revealed the notations that her echocardiogram was suggestive of a bicuspid aortic valve.
Like the Colorado statute, Washington's intentional concealment proviso requires more than just the alleged negligent act or omission forming the basis for the cause of action. The proviso is aimed at conduct or omissions intended to prevent the discovery of negligence or of the cause of action. Thus, while the question of whether fraud or intentional concealment has occurred within the meaning of RCW 4.16.350(3) is generally a question of fact for the trier of fact, Duke v. Boyd, 133 Wash.2d 80, 83, 942 P.2d 351 (1997); in this case plaintiff has failed to allege any facts implicating the proviso. In Duke, by way of contrast, the plaintiff alleged that the physician made misrepresentations and lied about the uniqueness of her unfavorable results from treatment. In Doe v. Finch, 133 Wash.2d 96, 942 P.2d 359 (1997), plaintiff's allegations sufficiently raised a question of fact as to fraudulent or intentional concealment where the psychologist allegedly lied to plaintiff when questioned about his relationship with plaintiff's wife. There are no similar allegations in this case.
There are no material issues of fact as to whether Dr. Speigel intentionally concealed any negligence from plaintiff and thus no material questions of fact as to whether the statute of limitations should be tolled under the intentional concealment proviso in RCW 4.16.350(3).
We affirm the summary judgment of dismissal on the basis that the statute of limitations bars this suit.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] Ms. Gunnier also sued her obstetrician, Dr. Harrington, but he was later dismissed from the action by agreement of the parties.