## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 7, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 7, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

BRUCE A. WOLF, as Personal Representative )
of the Estate of TIMOTHY JONES, deceased, )    No. 101477-5
                                          )
                    Petitioner,           )
                                          )
        v.                                )    En Banc
                                          )
STATE OF WASHINGTON,                      )
                                          )
                    Respondent.           )    Filed: September 7, 2023
_____ )

MADSEN, J.—At issue in this case is the triggering event for the statute of

limitations on childhood sexual abuse actions. RCW 4.16.340(1)(c) provides, "*All claims*

*or causes of action*" based on childhood sexual abuse shall be commenced within "three

years of the time the victim discovered that *the act caused the injury* for which the claim

is brought." (Emphasis added.) Timothy Jones' estate (Estate) brought negligence and

wrongful death claims against the State. On cross motions for summary judgment, the

trial court concluded the statute of limitations for negligence claims begins when a victim

recognizes the causal connection between the intentional abuse and their injuries. The

No. 101477-5

court granted summary judgment for the State and dismissed the Estate's claims as time barred. The Court of Appeals affirmed.

RCW 4.16.340(1) covers *all* claims arising from intentional childhood sexual abuse, including negligence claims against individuals and entities for failing to prevent alleged abuse. *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 708-09, 985 P.2d 262 (1999) (plurality opinion). By encompassing intentional and negligence claims, RCW 4.16.340 anticipates that multiple actors can be involved in childhood sexual abuse. Such a claim must be based on intentional conduct, but the act triggering the statute of limitations is the *alleged wrongful action* and resulting injury—in this case, the State's negligence in protecting Timothy[1] from sexual abuse while in foster care.

No evidence has been presented that Timothy made the causal connection between that alleged act and his injuries until August or September 2017, and the Estate filed its claims on March 12, 2020, within RCW 4.16.340(1)(c)'s three-year time period. Accordingly, we reverse summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.

BACKGROUND

Timothy was born to Jaqueline Jones in 1990.[2] In 2003, Jacqueline lost her home to foreclosure, and Timothy moved in with Price Nick Miller Jr., a family friend. A

---

[1] For clarity, we refer to Timothy Jones and other members of his family by their first names. No disrespect is intended.

[2] The facts are taken from the Estate's complaint. No party disputes the alleged facts.

No. 101477-5

month later, the Department of Children, Youth, and Families (DCYF)[3] was alerted that Miller was paying too much attention to children who were not his own. After investigating the report, DCYF removed Timothy from Miller's home based on this inappropriate behavior.

Timothy was briefly returned to Jacqueline but was again removed due to suspected neglect. In November 2003, Timothy was placed in foster care and DCYF filed a dependency petition. In December 2003, Timothy's counselor informed Timothy's social worker that Miller had visited Timothy at his foster home even though the foster parents had been told Timothy was not to have outside contact. Timothy was then placed in a new foster home. The new foster father told Timothy's counselor that Miller had visited the home, and the counselor noted that Miller had been present for at least two supervised visits between Timothy and Jacqueline. At another visitation, Timothy's counselor told Miller to leave multiple times, but Miller remained hiding in the parking lot. DCYF staff expressed concerns that Miller appeared to be stalking Timothy.

Timothy's dependency case was dismissed in 2006, and he moved back in with Jacqueline. Later that year, Timothy told a counselor that Miller had abused him sexually, physically, and emotionally from 1998 to 2006. The counselor reported this

---

[3] The Estate's complaint refers to DCYF. The Estate explains that at the time the abuse occurred, child welfare services were conducted by the Department of Social & Health Services (DSHS). In 2018, child protective services were transferred from DSHS to DCYF. RCW 43.216.906. The Court of Appeals' decision and supplemental briefing here refer to DCYF, DSHS, or the State interchangeably. We refer to DCYF as the agency responsible for Timothy's dependency case and to the State as the party representing DCYF on appeal.

No. 101477-5

abuse, and Miller was arrested. In 2008, Miller pleaded guilty to second degree child rape connected to his abuse of Timothy and second degree child molestation related to another child. Miller was sentenced to 119 months to life in prison.

In 2007 or 2008, Jacqueline sued Miller on Timothy's behalf. The attorney did not advise Timothy or his mother that there may be a lawsuit against the State or that the State may be liable for allowing Miller's abuse to occur. The case appears to have settled. No other information about the suit is included in the record.

In 2012, Timothy became romantically involved with Jimmy Acevedo. Sometime in mid-2017, and prompted by a news story about childhood sexual abuse, Timothy and Acevedo discussed whether Timothy may have a claim against the State. Acevedo recommended that Timothy consult a lawyer. In fall 2017, Timothy contacted a firm that began investigating Timothy's case. On June 2, 2018, Timothy committed suicide.

Jacqueline was appointed personal representative of Timothy's estate. She filed claims for negligence, negligent investigation, and wrongful death against the State on March 12, 2020. Jacqueline, Acevedo, and Timothy's half-brother submitted declarations stating that Timothy had never told them or indicated he thought he had a claim against the State or held the State responsible for his abuse.

On September 3, 2020, Bruce Wolf was appointed as the successor personal representative for Timothy's estate. The State then pleaded the affirmative defense that the Estate's claims were barred by RCW 4.16.340's statute of limitations.

4

No. 101477-5

The Estate filed for partial summary judgment, arguing that its claims were governed by RCW 4.16.340(1)(c) and that no evidence showed that Timothy discovered the link between the State's negligence and his injuries. The State filed a cross motion for summary judgment, asserting that the Estate had the burden of proof to show its claims were timely and no such evidence was submitted. In response, the Estate filed a declaration from Dr. Gilbert Kliman, who presented "an expert psychiatric opinion" that Timothy could not be expected to independently know the connection between his damages and the State's negligence. Clerk's Papers at 111.

The parties disagreed as to which bore the burden of proof that Timothy knew of the connection between the alleged wrongful act and his injuries. The Estate argued that it was the State's burden to prove the statute of limitations had run as an affirmative defense, while the State answered that the Estate had the burden to provide some amount of evidence to overcome summary judgment and had not done so—the inference created by the declarations was insufficient, according to the State.

The trial court agreed with the State. The court concluded that there must be some evidence that Timothy recognized his injuries within the statute of limitations. The court also ruled that the declarations were irrelevant because it was the plaintiff's burden to show evidence that Timothy discovered his claim within three years. Based on the burden of proof for the statute of limitations, the trial court granted summary judgment for the State and denied the Estate's motion.

5

No. 101477-5

The Estate appealed the dismissal of its claims via summary judgment and the trial court's imposition of the burden of proof. *Wolf v. State*, 24 Wn. App. 2d 290, 292, 519 P.3d 608 (2022). The Court of Appeals affirmed summary judgment in a split opinion. *Id*. at 314.

The majority decision focused on the term "act," which RCW 4.16.340(1) does not define but which is referenced in subsection (5). *Id.* at 305. In defining "childhood sexual abuse," RCW 4.16.340(5) provides,

> As used in this section, "*childhood sexual abuse*" means any act committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which *act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed*.

(Emphasis added.) The majority applied this definition to the term "act" in subsection (1)(c), interpreting the "act that caused the injury for which the claim is brought" to mean specifically the intentional conduct referenced in subsection (5). *Wolf*, 24 Wn. App. 2d at 305-06. In short, the statute contained "no language . . . that suggests that a different 'act' other than the childhood sexual abuse that caused the injuries may form the basis for calculating the running of the statute of limitations." *Id*. at 306. The statute specifies "act" and not "claim," therefore, the Court of Appeals concluded, when a victim knows subjectively of the causal connection between the intentional act of childhood sexual abuse and their injuries, the statute of limitations for *all claims*, including negligence, begins to run. *Id*. The record shows Timothy connected Miller's abuse to his injuries by 2008 after reporting the abuse, Miller's guilty plea, and Jacqueline's suit on Timothy's

6

No. 101477-5

behalf. *Id.* at 308-09. According to the majority, Timothy had made the required causal connection when he was a minor in 2006. *Id*. at 309.

The majority also noted that RCW 4.16.340(1)(c) was tolled until Timothy turned 18 years old, which occurred in 2008; Timothy then had three years to bring suit against the State—in 2011. *Id*. Because the Estate filed its lawsuit in 2020, more than three years later, the majority held the statute of limitations expired and the Estate's claims were untimely. *Id.*[4]

Next, the Court of Appeals' majority addressed the burden of proof. *Id*. at 311-13. At trial, the court granted the State's motion for summary judgment on statute of limitations grounds, and as the moving party, it was the State's burden to show the absence of a genuine issue of material fact. *Id.* at 313. It was therefore the State's burden to present evidence showing RCW 4.16.340(1)(c)'s statute of limitations had run based on Timothy's awareness of the link between abuse and injury. *Id.* The Court of Appeals then concluded that the State met its burden below. *Id.* No party challenges this conclusion.

The dissenting opinion agreed with the majority analysis of the burden of proof but disagreed with its interpretation of RCW 4.16.340(1)(c). *Id.* at 314, 318 n.13. In the

---

[4] The majority also rejected the State's argument that the common law discovery rule applies to negligence claims under RCW 4.16.340. *Wolf*, 24 Wn. App. 2d at 309-10. Tort suits accrue when the act or omission occurs, but the common law discovery rule tolls this general rule until the plaintiff knows or through reasonable diligence should know the facts needed for a legal claim. *Id.* at 310. Because *C.J.C.*, 138 Wn.2d at 714, held that .340 encompasses intentional and negligence claims, they are not subject to the common law rule. *Id.* at 311. Neither the State nor the Estate challenges this holding.

dissent's view, the term "act" in .340(1)(c) refers to the conduct of different tortfeasors, such as the negligent conduct of a third party causing the injury for which the claim is brought. *Id.* at 315. *C.J.C.* clarified that RCW 4.16.340 encompasses, as its plain language shows, *all* claims based on intentional childhood sexual abuse. 138 Wn.2d at 709, 714. The *Wolf* dissent would have applied the reasoning in an unpublished Court of Appeals, Division One, case that considered RCW 4.16.340(1)(c) and *C.J.C.* to hold that the causal connection must include intentional conduct and injury as well as negligent conduct and injury. *Wolf*, 24 Wn. App. 2d at 316 (citing *Kirchoff v. City of Kelso*, No. 73666-3-I, slip op. at 10 (Wash. Ct. App. Oct. 12, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/736663.pdf). The dissent characterized as a logical fallacy the majority's conclusion that "act" means only intentional sexual abuse. *Id*. at 316-17. It made "little sense," the dissent reasoned, to hold a cause of action against one tortfeasor accrued when the victim became aware of a separate injury caused by a different tortfeasor. *Id.* at 317. Instead, the injury in question is, for the purposes of the statute of limitations, the injury "'*for which the claim is brought*.'" *Id.* (quoting RCW 4.16.340(1)(c)).

The Estate sought review in this court, which we granted. We received amici curiae briefing in support of the Estate from the National Crime Victim Law Institute; Connelly Law Offices; and (as a group) the Washington Defender Association, Family Violence Appellate Project, Sexual Violence Law Center, and Legal Voice.[5]

---

[5] The Estate moved to strike a portion of the State's answer to amici curiae. The motion was passed to the merits, which is addressed below.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101477-5

ANALYSIS

We review summary judgment orders de novo, considering the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c).

The meaning of a statute is a question of law we review de novo. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (citing *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). "Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature. We determine the intent of the legislature primarily from the statutory language. In the absence of ambiguity, we will give effect to the plain meaning of the statutory language." *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011) (citations omitted). Plain meaning "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

At issue in this case is the triggering event for the statute of limitations for childhood sexual abuse claims in RCW 4.16.340. "An action accrues, generally speaking, when a party has the right to apply to a court for relief." *Gunnier v. Yakima Heart Ctr. Inc., P.S.*, 134 Wn.2d 854, 859, 953 P.2d 1162 (1998) (citing *Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996)). Injury is one of the elements of a

9

No. 101477-5

negligence cause of action. *Id.* "'[U]ntil a plaintiff suffers appreciable harm as a consequence of negligence, [they] cannot establish a cause of action.'" *Id.* (quoting *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219, 543 P.2d 338 (1975)).

*Black's Law Dictionary* defines a "statute of limitations" as "[a] law that bars claims after a specified period; specif[ically] a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered). • The purpose of such a statute is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh." BLACK'S LAW DICTIONARY 1707 (11th ed. 2019). A statute of limitations is "'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Id.* (quoting *Ord. of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49, 64 S. Ct. 582, 88 L. Ed. 788 (1944)).

RCW 4.16.340(1) is a special statute of limitations that applies to civil actions for injuries resulting from childhood sexual abuse. *B.R. v. Horsley*, 186 Wn. App. 294, 299, 345 P.3d 836 (2015). The provision states,

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
> (a) Within three years of the act alleged to have caused the injury or condition;

10

No. 101477-5

> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
>
> PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.
>
> . . . .
>
> (5) As used in this section, "childhood sexual abuse" means any act committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.

RCW 4.16.340. The legislature found that victims of childhood abuse may not be able to understand or connect past abuse and emotional harm or damage until many years later. LAWS OF 1991, ch. 212, § 1. Victims may be aware of injuries related to childhood sexual abuse, but more serious injuries may be discovered many years later. *Id.* These findings were prompted in part to reverse this court's decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986), and the line of cases stating that "discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations." *Id.*

*C.J.C.* explained the legislature's response to *Tyson*. In *Tyson*, the court held the discovery rule did not apply to intentional tort claims where the plaintiff had suppressed the memory of the abuse during the period of the statute of limitations. *C.J.C.*, 138 Wn.2d at 706 n.4 (citing *Tyson*, 107 Wn.2d at 79). By enacting RCW 4.15.340, lawmakers ensured that the discovery of an earlier, less serious injury should not affect the time period to bring claims based on injuries discovered later. LAWS OF 1991, ch.

11

No. 101477-5

212, § 1. In other words, the memory of harm for a childhood abuse victim may reveal itself at different points in time. As long as the predicate of that harm is the childhood sexual abuse, RCW 4.16.340 provides a mechanism for redress.

Lawmakers intended RCW 4.16.340 to provide a "broad and generous application of the discovery rule to civil actions for injuries caused by childhood sexual abuse . . . who too often were left without a remedy under" prior statutes of limitations. *C.J.C.*, 138 Wn.2d at 712. This special statute of limitations tolls civil claims based on intentional childhood sexual abuse. The time limit does not begin to run when a victim discovers an injury, rather the statute of limitations focuses on when a victim discovers the causal link between abuse and injury for which the suit is brought. *Korst v. McMahon*, 136 Wn. App. 202, 208, 148 P.3d 1081 (2006) (citing RCW 4.16.340(1)(c)). This is because the legislature specifically anticipated that victims may know they are suffering emotional harm but may not be able to understand the connection between those symptoms and the abuse. *Id.*

Subsection (c) generally applies in two instances. First, when a victim is aware of the abuse and that they suffered harm as a result, but the victim discovers a new and qualitatively different injury from the abuse. *Carollo v. Dahl*, 157 Wn. App. 796, 801, 240 P.3d 1172 (2010). Second, when the victim is aware of the abuse and injury but discovers a causal connection of which they were previously unaware between the wrongful act and the harm. *Hollmann v. Corcoran*, 89 Wn. App. 323, 334, 949 P.2d 386 (1997).

Here, the parties dispute what "act" triggers the three-year statute of limitations for negligence claims based on childhood sexual abuse. The State contends the victim's connection between the intentional act and injury begins the clock for *all* claims and urges us to affirm the Court of Appeals' majority opinion. The Estate argues that the victim's connection between the negligent conduct and resulting harm is the triggering event, in accordance with the dissent. We agree with the Estate.

RCW 4.16.340(1) states explicitly that "[*a*]*ll claims or causes of action*" based on intentional childhood sexual assault must be brought within a three-year period. (Emphasis added.) Guided by the expansive scope of .340(1), *C.J.C.* held that the statute applies to all tort claims based on childhood sexual abuse, including negligence actions. 138 Wn.2d at 709. RCW 4.16.340(1)'s broad language is critical to its interpretation. *See id.* at 708-09 ("Subsection (1) of RCW 4.16.340 controls the scope of the statute's applicability."). Because the statute encompasses *all* claims and causes of actions stemming from childhood sexual abuse, it anticipates that other actors can be involved, namely the direct perpetrator and third parties.

This recognition—that multiple tortfeasors can be sued under .340—clarifies subsection (c). RCW 4.16.340(1)(c) states that a victim must bring a claim based on childhood sexual abuse "[w]ithin three years of the time the victim discovered that the *act* caused the *injury for which the claim is brought*." (Emphasis added.) For a negligence suit, the "act" in subsection (c) thus refers to the third party's conduct causing the injury for which a victim seeks damages in tort. Determining when the three-year period begins

No. 101477-5

for such claims is a question of fact: when the victim made the causal connection between the negligent act and the resulting injury. RCW 4.16.340(1)(c).

The State and the Court of Appeals' majority opinion read the term "act" too narrowly. When a victim experiences intentional childhood sexual abuse, they may not know other tortfeasors were involved. Many years later, when the victim becomes aware of that involvement, they would be precluded from seeking redress because they knew of the direct abuse and did not bring a suit against a different tortfeasor within three years. Subsection (c), unlike subsection (b), does not contain language requiring that a victim "reasonably should have discovered that the injury or condition was caused by said act." RCW 4.16.340(1)(b). Yet the State's interpretation would impose such a requirement. Where the legislature omits language from a statute, this court will not read language into it. *State v. Cooper*, 156 Wn.2d 475, 480, 128 P.3d 1234 (2006).

Moreover, the State's reading of the term "act" throughout RCW 4.16.340 to mean *only* the intentional sexual abuse implies that no third-party negligence claim is available. This plainly contradicts the plain meaning of RCW 4.16.340(1) and *C.J.C.*, which makes clear that childhood sexual abuse actions include intentional and negligent tort claims. The State also cites to RCW 4.16.340(2) as supporting its narrow definition of "act." That provision allows a victim to elect "an act," rather than establishing a specific "act in a series of continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator." RCW 4.16.340(2) explicitly applies to acts of intentional abuse.

14

No. 101477-5

For such claims brought under .340(1)(c), .340(2) provides flexibility for a victim in pleading their intentional tort claim. RCW 4.16.340(2) does not control the meaning of "act" in .340(1)(c). Subsection (1)(c) does not contain the same modifying language as subsection (2), that states the "act *in a series of continuing sexual abuse . . .* may compute the date of discovery from the date of discovery of the last *act by the same perpetrator* which is part of *a common scheme or plan of sexual abuse or exploitation.*" (Emphasis added.)

Knowledge of the intentional abuse is a prerequisite, it is the predicate conduct on which all claims must be based under .340. But a victim's specific knowledge of an intentional act says nothing about the conduct of *other tortfeasors*. Considering the plain language of the statute, which encompasses *all* claims or suits based on childhood sexual abuse, it would make little sense for a separate claim regarding the actions of one tortfeasor to accrue based on knowledge of a different tortfeasor. *See Wolf*, 24 Wn. App. 2d at 317.

The expansive scope of .340(1) makes clear that the three-year statute of limitations applies to the act causing the injury for which a claim is brought. That is, for claims of intentional sexual abuse, the statute of limitations runs when the victim makes the causal connection between the intentional act and resulting injury. For claims of third-party negligence based on intentional sexual abuse, the statute of limitations runs when a victim makes the causal connection between the third party's negligent act and

15

No. 101477-5

resulting injury.[6] This interpretation furthers the underlying purpose of RCW 4.16.340—

to provide broad protection for victims of childhood sexual abuse and generously apply

the rules of discovery to "all" tort claims, both intentional and negligent, for which the

gravamen of the claim is the childhood sexual abuse. RCW 4.16.340(1); *C.J.C.*, 138

Wn.2d at 709-10, 712.

We hold that pursuant to the plain language of RCW 4.16.340(1)(c), a negligence

claim accrues when a victim recognizes the connection between a third party's wrongful

conduct and the victim's resulting injury. Because the statute is plain on its face, it is

unambiguous and an unambiguous statute is not subject to judicial construction. *Am.

Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004).

No party challenged the Court of Appeals' conclusion that it was the State's

burden to show that .340(1)(c)'s statute of limitations period had expired. The State did

not present this evidence. Rather, the Estate alleged that by mid- to late-2017, Timothy

had contacted a law firm to investigate whether he had a claim against the State for

allowing his abuse at Miller's hands. The declarations from Jaqueline, Jimmy Acevedo,

and Timothy's half-brother state that prior to 2017, Timothy never indicated he

connected his injuries to the State or believed he had any claim against the State.[7]

---

[6] An unpublished case from Division One employed a similar analysis. In *Kirchoff*, the Court of Appeals held that a negligence claim accrues under RCW 4.16.340(1)(c) when the victim subjectively understands the connection between the third-party's conduct and resulting injuries. No. 73666-3-I, slip op. at 10; *see also M.L. v. Craigslist, Inc.*, No. C19-6153 BHS-TLF, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022) (court order) (adopting *Kirchoff*'s interpretation of .340(1)(c)).

[7] The Estate also argued that the "trial court erred" in its treatment of the declarations. Pet. for Rev. at 26 & n.11. The trial court stated that it did not matter whether it considered the

16

No. 101477-5

The Estate filed this lawsuit in March 2020, less than three years from the time Timothy apparently made a connection between the State's actions and his injuries. Accordingly, the Estate's claims were timely filed. Therefore, we reverse the grant of summary judgment for the State and remand the case for further proceedings.

The Estate also moved to strike portions of the State's response to amici. The State answered and the Estate submitted a reply. The motion was passed to the merits. The Estate asks us to strike the State's reference to a Department of Enterprise Services study because it was not presented to the trial court. We decline to do so.

Appellate courts will consider "only evidence and issues called to the attention of the trial court." RAP 9.12. "The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court." *Wash. Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993) (citing *Southcenter View Condo. Owners Ass'n v. Condo. Builders, Inc.*, 47 Wn. App. 767, 736 P.2d 1075 (1986) (factual allegations raised in appellate brief did not preclude summary judgment where unsupported in trial court record)). There is no dispute the State did not submit the study to the trial court.

---

declarations—"the statement that he never mentioned [a claim against the State] creates an inference of knowledge—that, therefore, he never mentioned it; therefore, he didn't have it—I think that's stacking inference on inference, and I don't think it satisfies, what I believe, is the plaintiff's burden here which is to show some amount of evidence that he only discovered his claim . . . within three years." Verbatim Rep. of Zoom Proc. (May 28, 2021) at 18-19. The trial court tied its ruling on the declarations' inferences about Timothy's knowledge to its erroneous ruling on the burden of proof. The Court of Appeals held the burden falls on the State to show the statute of limitation expired, which the State has not satisfied. Therefore, the trial court did not explicitly rule on the admissibility of the declarations. Whether an inference is sufficient under .340(1)(c) is a question to be resolved in the trial court.

17

No. 101477-5

The 2020 study was authored by the state risk manager and was "provided to illustrate judicial, legislative, and economic facts as to the number of claims made against the State and the results thereof. The study is directed to the Director of the Office of Financial Management, as well as two sitting legislators . . . [and] is also part of the legislative record relating to RCW 4.16.340." State of Wash. Resp. to Pet'r's Mot. To Strike at 3. As the State points out, the study is not an allegation about the facts of the underlying case—Timothy's claim against the State—which would be inappropriate for our review. Moreover, the State is responding to amici, and this court may, but usually does not, reach arguments raised by amicus. *State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83 (2016).

Rather, the State's use of the study is essentially a policy argument about how the childhood sexual abuse statute has been interpreted in the past and its concern that a different interpretation risks opening the floodgates of litigation. We have recognized that courts can take notice of "'legislative facts'—social, economic, and scientific facts that 'simply supply premises in the process of legal reasoning.'" *Wyman v. Wallace*, 94 Wn.2d 99, 102, 615 P.2d 452 (1980). Courts may take notice of scholarly words, scientific studies, and social facts. *Id.* We deny the Estate's motion to strike.

Finally, the Estate renews its request for costs on appeal. As in the Court of Appeals below, the Estate provides no support for its request, but RAP 14.2 allows for an award of costs to the substantially prevailing party on review. *Wolf*, 24 Wn. App. 2d at 313-14 (citing *Hurley v. Port Blakely Tree Farms LP*, 182 Wn. App. 753, 774-75, 332

18

No. 101477-5

P.3d 469 (2014) ("[The party] makes no argument as to why attorney fees under RAP 18.1 are proper. Therefore, [the party] is entitled only to an award of allowable costs and expenses under RAP 14.2 and 14.3.")). Because we agree with the Estate's interpretation of RCW 4.16.340(1)(c)) and reverse the trial court's grant of summary judgment to the State, we grant the Estate's request for appellate costs.

CONCLUSION

Under the plain language of RCW 4.16.340(1)(c), the period within which a victim must bring a claim begins when the victim connects the wrongful conduct of a third party to the victim's injury. As the party arguing the affirmative defense that the statute of limitations has run, the State bears the burden of proof. The State offered no evidence that Timothy made any connection between the State's actions and his injuries. The Estate alleged evidence that Timothy did not make such a connection until 2017, and it brought the current case in 2020—within RCW 4.16.340(1)(c)'s three-year period. Accordingly, we reverse the trial court's grant of summary judgment dismissing the Estate's claims and remand to the trial court for further proceedings consistent with this opinion. We also deny the motion to strike and grant costs to the Estate.

19

No. 101477-5

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Bender, J.P.T.